# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| ALEDDRA INC.,<br><br>Plaintiff,<br><br>v.<br><br>RAB LIGHTING INC.,<br><br>Defendant. | Civil Action No. 7:26-cv-00065-O |

**DEFENDANT RAB LIGHTING INC.'S PRELIMINARY INVALIDITY CONTENTIONS**

## I. INTRODUCTION

Pursuant to Paragraph 3-3 of Miscellaneous Order No. 62, Defendant RAB Lighting Inc. ("Defendant" or "RAB") hereby provides its Preliminary Invalidity Contentions with respect to the claims identified by Plaintiff Aleddra Inc. ("Plaintiff" or "Aleddra") in its Preliminary Disclosure of Asserted Claims and Infringement Contentions ("Infringement Contentions), which Plaintiff served on August 10, 2026.

For the avoidance of doubt, Plaintiff asserts infringement of the claims listed in the table below. The claims identified below are collectively referred to as the "Asserted Claims," and the five listed patents are collectively referred to as the "Asserted Patents."

| Asserted Patents | Asserted Claims |
|---|---|
| U.S. Patent No. 10,295,905 | 1-2, 7, and 9-18 |
| U.S. Patent No. 10,237,946 | 1-5, 9-13 and 15-20 |
| U.S. Patent No. 10,645,782 | 1-2, 4-6, 8-10, 20-22, 24-26, 28-30, and 40 |
| U.S. Patent No. 11,172,551 | 1-2 and 9-21 |

| | |
|---|---|
| U.S. Patent No. 11,846,396 | 1-5, 15-17 and 19 |

RAB provides its Preliminary Invalidity Contentions and related documents pertaining only to the Asserted Claims as identified by Plaintiff in its Infringement Contentions. In the event the Court permits Plaintiff to assert additional claims against RAB, RAB reserves the right to disclose new or supplemental invalidity contentions regarding such claims.

The citation of prior art herein and the accompanying exhibits are being disclosed as, and should be construed as nothing more than, RAB's Preliminary Invalidity Contentions, and may be based on Plaintiff's apparent view as to the scope of the Asserted Claims as reflected in Plaintiff's Infringement Contentions. RAB in no way accepts Plaintiff's apparent interpretation of the claims as reflecting the proper scope of the claims. To the extent RAB determines that a different meaning is appropriate for any claim term, it will assert that in connection with the Court's procedures, and it reserves the right to update these Preliminary Invalidity Contentions as a result of the *Markman* hearing, the Court's *Markman* decision, or any other subsequent clarification or alteration of the meaning of claim terms.

RAB's Preliminary Invalidity Contentions are based on its current knowledge, understanding of the prior art, and information reasonably available at this time. RAB expressly reserves the right to amend or supplement these Preliminary Invalidity Contentions based on further investigation, discovery, evaluation of the scope and content of the prior art, admissions, the Court's claim construction, any other reasonable basis, and as permitted by the Court, the Local Rules, and the Federal Rules of Civil Procedure.

Much of the prior art identified in the attached exhibits reflects common knowledge and the state of the art before the filing date of the asserted patents. In many instances where a particular contention calls for combining references, any one of a number of references can be

combined. The inclusion of certain exemplary combinations of prior art references does not exclude other combinations based on the claim charts attached hereto.

## II. RESERVATION OF RIGHTS

Pursuant to Paragraphs 3-3 and 3-4 of Miscellaneous Order No. 62, RAB hereby provides disclosures and related documents pertaining only to the Asserted Claims identified by Plaintiff in its Infringement Contentions. RAB reserves the right to modify, amend, or supplement these Invalidity Contentions to show the invalidity of any additional claims that the Court may allow Plaintiff to later assert. Miscellaneous Order No. 62 and the Court's Scheduling Order contemplate that these Preliminary Invalidity Contentions be prepared and served in response to Plaintiff's Infringement Contentions. However, Plaintiff's Infringement Contentions are insufficient in that they lack proper and complete disclosure as to how RAB and each Accused Product allegedly infringe the Asserted Claims. As such, RAB reserves the right to modify, amend, and/or supplement these Invalidity Contentions should the Court permit Plaintiff to correct, clarify, amend, and/or supplement its Infringement Contentions.

RAB's Preliminary Invalidity Contentions and selection of documents accompanying them are based on information currently available to RAB and is subject to further revision. For example, Plaintiff (or its counsel) may be in possession of prior art that has not been disclosed to RAB. As another example, because discovery has only recently begun, RAB reserves the right to amend or supplement the information provided herein, including identifying and relying on additional references.

To the extent these Preliminary Invalidity Contentions reflect or otherwise embody constructions of terms or phrases in the Asserted Claims, RAB is not proposing any such constructions as proper constructions of those terms or phrases. Various positions put forth in these Invalidity Contentions are submitted in view of Plaintiff's incorrect and/or overbroad

interpretation of its claims as evidenced by its Infringement Contentions provided to RAB. These Invalidity Contentions are not intended to, and do not necessarily, reflect RAB's interpretation of the true and proper scope of the Asserted Claims. RAB reserves the right to adopt claim construction positions that differ from positions put forth in this document.

RAB further objects to any attempt to infer any claim constructions from any identification of potential prior art. In those instances where RAB asserts that the Asserted Claims are invalid under 35 U.S.C. § 112 (*e.g.*, no written description, not enabled, and/or indefinite), RAB has applied the prior art in accordance with its assumption that Plaintiff contends such Asserted Claims (1) are definite, (2) have written description support, and (3) are enabled, as evidenced by Plaintiff's Infringement Contentions. As such, RAB's Preliminary Invalidity Contentions do not represent its agreement or view as to the meaning, definiteness, written description support for, or enablement of any asserted claim. These Invalidity Contentions and accompanying documents are not intended to reflect RAB's claim construction contentions, which will be disclosed in accordance with the Court's Scheduling Order.

RAB's Preliminary Invalidity Contentions may change depending on the Court's construction of the Asserted Claims, any findings as to the priority date of the Asserted Claims, and/or positions that Plaintiff or its experts may take concerning claim construction, infringement, and/or invalidity issues. Prior art not included in this disclosure, whether known or unknown to RAB, may become relevant. In particular, RAB is currently unaware of the extent, if any, to which Plaintiff will contend that limitations of the Asserted Claims are not disclosed in the prior art identified by RAB, or will contend that any of the identified references do not qualify as prior art. To the extent that such an issue arises, RAB reserves the right to identify other references that,

*inter alia*, would have made the addition of the allegedly missing limitation to the disclosed device or method obvious.

The identification of any patent or patent publication shall be deemed to include any counterpart patent or application filed, published, or issued anywhere in the world. The citation to any specifications published by standard-setting organizations shall be deemed to include any product that implements such specifications and that would qualify as prior art under Pre- or Post-AIA 35 U.S.C. § 102.

RAB's claim charts cite particular teachings and disclosures of the prior art as applied to features of the Asserted Claims. A person having ordinary skill in the art ("POSITA"), however, may view an item of prior art in the context of other publications, literature, products, and understanding. As such, the cited portions are only exemplary, and RAB reserves the right to rely on uncited portions of the prior art references and on other publications and expert testimony as aids in understanding and interpreting the cited portions, as providing context thereto, and as additional evidence that the prior art discloses a claim limitation. RAB further reserves the right to rely on uncited portions of the prior art references, other publications, and testimony to establish bases for combinations of certain cited references that render the Asserted Claims obvious. Further, for any combination, RAB reserves the right to rely additionally on information generally known to those skilled in the art or common sense.

The references discussed in the claim charts may disclose the elements of the Asserted Claims explicitly or inherently, or they may be relied upon to show the state of the art in the relevant time frame. The suggested obviousness combinations are provided in the alternative to RAB's anticipation contentions and are not to be construed to suggest that any reference included in the combinations is not by itself anticipatory.

## III. PRIORITY AND CONCEPTION DATES FOR THE ASSERTED CLAIMS

Plaintiff has alleged that the Asserted Claims are entitled to the priority dates shown below:

| Patent | Asserted Claims | Priority Date |
|---|---|---|
| U.S. Patent No. 10,225,905 | 1-2, 7, and 9-18 | October 8, 2018 |
| U.S. Patent No. 10,237,946 | 1-5, 9-13 and 15-20 | December 3, 2018 |
| U.S. Patent No. 10,645,782 | 1-2, 4-6, 8-10, 20-22, 24-26, 28-30, and 40 | September 16, 2019 |
| U.S. Patent No. 11,172,551 | 1-2 and 9-21 | May 21, 2020 |
| U.S. Patent No. 11,846,396 | 1-5, 15-17 and 19 | August 18, 2021 |

RAB understands that Plaintiff is not asserting an invention date, conception, reduction to practice, design, and/or development of the claimed invention, prior to the asserted priority dates identified above. To the extent Plaintiff later alleges that any such activities occurred prior to the priority dates identified above, RAB reserves the right to object to such belated changes in position and/or to supplement these Preliminary Invalidity Contentions to address any such contention, including by identifying and/or charting additional prior art that may become relevant in view of such assertion.

To the extent Plaintiff alleges that any prior art relied on in these Preliminary Invalidity Contentions do not actually qualify as prior art to the Asserted Claims, RAB reserves the right to rebut those allegations (e.g., by demonstrating an earlier critical date for the challenged prior art and/or a later priority date and/or date of invention for a particular Asserted Claim). RAB also reserves the right to rely on additional documents, information, and evidence to demonstrate public availability or public availability by a certain date of a prior-art reference or to rebut any efforts

by Plaintiff to allege any reference was not publicly available or publicly available by a certain date or otherwise available as prior art.

## IV. STATE OF THE PRIOR ART

This section describes the general state of the art surrounding the Asserted Claims at the time of the alleged invention and identifies prior-art references providing additional background, detail, and context, on which RAB may rely. RAB intends to rely on each of the prior art references discussed below and in exhibits to these Invalidity Contentions for purposes of demonstrating the state of the art for the Asserted Claims. RAB also reserves the right to rely on the discussions of the state of the art and prior art in each of the Asserted Patents and their file histories including explanations of the state of the art and the correspondence of prior art references with the claims of the Asserted Patents. RAB further expressly reserves the right to supplement their summary of the state of the art, including for example, by information from any of the authors or named inventors on any of the prior art references, by personnel familiar with systems based on any of the prior art, or by technical experts retained on behalf of any party.

### A. U.S. Patent No. 10,225,905

The asserted claims of the ’905 Patent recite a conventional architecture for an LED light: a charging circuit that keeps a battery charged via a main AC line voltage, a boost stage that runs the LEDs from that battery when the main AC line drops out, and a sensing circuit that decides which source is in control. The recited architecture has been the standard emergency-lighting design since the 1980s including in, for example, U.S. Patent 4,977,351, and its LED-specific implementation was well known including in, for example, U.S. Patent Appl. Publ. No. 2013/0147376A1. The remaining claim limitations describe the design of an ordinary double-ended (Type B) LED tube: four pins, a rectifier per end, EMI input filters, and an isolated

transformer-based driver. That basic design was likewise known in the art well before the relevant date, including in Plaintiff's own earlier patent and published applications.

The "idea" to include a battery power source in a light so as to provide for emergency lighting in the event that the main AC power source is disconnected or otherwise unavailable was known more than a decade before the alleged priority date of the '905 Patent. By way of example only, European Patent Application No. 1,507,327 (published February 16, 2005) discloses an emergency lighting unit integrated onto a single board with the lamp's normal ballast: an AC/DC stage generates a low-voltage DC rail that charges a battery; the control circuit supervises the low input DC voltage and/or the battery current to recognize a failure of the direct mains input; a DC/DC converter then converts the battery voltage up to the high-voltage DC rail that runs the lamp; and the control circuit switches to emergency mode on mains failure and back again when the mains returns within tolerance. The reference even discloses reducing output power in emergency mode by controlling the high-voltage rail. Chinese Patent Application No. 202218458 (published May 9, 2012) likewise discloses the same functional set expressly for LED and fluorescent lamps: rechargeable battery, charging circuit, mains-powered normal path, inverter path, voltage detection, PWM control, and automatic switchover within one second.

Prior art cited during original prosecution of the '905 Patent confirms that the core elements of the asserted claims were known in the art for decades before the patent's alleged priority date. For example, U.S. Patent No. 4,628,438 and U.S. Patent No. 4,742,290 issued in the 1980s and describe multi-stage battery charging control, while U.S. Patent No. 6,330,176 (which issued in 2001) describes techniques for automatic transfer between power sources with interlocked switching and battery hold-over during the handoff.

Years before the alleged priority date of the ’905 Patent, ordinary artisans had already developed emergency lighting modules for LED lights. For example, U.S. Patent Application Publ. No. 2013/0147376A1 discloses an emergency lighting module for an LED light containing: a rechargeable battery charged from the lighting fixture’s AC/DC converter; an AC detector that continuously monitors line status; a microcontroller that, on loss of AC voltage, commands a booster stage to ramp the battery-derived rail up to the normal LED operating voltage; diode logic that selects whichever rail is higher between the AC-derived and battery-derived voltages; and PWM control that runs the LEDs at reduced current on battery, ramping down to roughly 60% of initial output at the 90-minute mark to meet UL 924.

Similarly, U.S. Patent Application Publ. No. 2009/0237919 discloses an LED light containing a rechargeable battery, a first circuit, a second circuit, and a switch, where the first circuit powers the LED lights from the AC power source through an AC-DC rectifier, the second circuit powers the LED lights from the rechargeable battery, and a sensing circuit automatically selects between the two, charging the battery while the main AC voltage is present and switching to the battery to power the LED lights upon failure of the main AC voltage.

**B. U.S. Patent No. 10,237,946**

The asserted claims of the ’946 Patent recite a conventional dual-path LED driver architecture with a built-in test feature: a first full-wave rectifier and input filter feeding a charging circuit that keeps a battery charged from the AC mains, a second full-wave rectifier and input filter feeding a second driver that runs the LED array directly from the AC mains at full power, a first driver that converts the battery voltage up to drive the LED array when the AC mains is unavailable, and a circuit that auto-selects between the two drivers and lets an installer verify battery operation from the fixture itself. That architecture, including the auto-selecting dual-driver

topology and the signaling between drivers, has been the standard design for uninterruptible and backup power supplies since the 1990s, including in the very prior art cited on the face of the '946 Patent itself: U.S. Patent No. 5,631,814 to Zak (issued 1997) and U.S. Patent No. 6,330,176 to Thrap (issued 2001). The remaining limitations, directed to a stand-alone push-button test switch and an LED-based charge-status indicator, describe a test and indicator scheme that was already in use in LED emergency lighting modules before the relevant date, including in the patentee's own field as reflected in U.S. Patent Appl. Publ. No. 2013/0127362A1 to Trainor et al. ("Trainor-II").

The "idea" of using two independent driver paths, one powered from the AC mains and one powered from a battery, with a control signal that automatically disables one path and enables the other depending on whether AC power is present, was known well before the alleged priority date of the '946 Patent. By way of example only, U.S. Patent No. 5,631,814 to Zak discloses an uninterruptible power supply in which an opto-isolator-based AC detection circuit monitors the main line voltage and, on failure, disables the PWM controller for the AC-fed DC-DC converter while enabling the PWM controller for a battery-fed power switch and isolating transformer, restoring the original configuration once the mains recovers. The reference also discloses an EMI filter at the AC input, a boost charger that converts the DC bus voltage into a charging voltage for the battery, and an over-voltage protection circuit and timer that regulate how long and how much the battery is charged, the same functions performed by the charging circuit and detection circuit of the '946 Patent. U.S. Patent No. 6,330,176 to Thrap discloses the complementary automatic-transfer function expressly: a first switch control circuit and a second switch control circuit, each comprising a voltage detector circuit, a relay driver circuit, and a current detector circuit, that generate enable and inhibit signals so that only one of two power sources is coupled to the load

bus at a time, with the state of one switch automatically inhibiting the other. This is the same auto-select, mutually-exclusive enablement of two driver paths recited in the asserted claims, applied there to two AC sources rather than to an AC source and a battery.

Prior art confirms that generalizing this same auto-selecting, dual-source architecture to a rechargeable battery and DC loads was also known well before the priority date. U.S. Patent No. 6,795,322 to Aihara discloses a power supply with an AC/DC converter and a DC/DC converter that supplies a load, together with a parallel DC converter, comprising staged converter and transformer sections, that both charges a battery from the AC/DC converter's output and discharges the battery back into the DC/DC converter's input when needed, mirroring the ’946 Patent's separate charging-circuit and first-driver transformer stages. U.S. Patent No. 7,550,873 to Jiang discloses an uninterruptible power supply in which a control circuit continuously monitors the DC voltage produced by an AC-DC converter and, on detecting that the AC supply has become unavailable or has dropped below a threshold, automatically switches a plurality of DC-DC voltage converters from drawing on the AC-DC converter's output to drawing on a rechargeable battery array’s output instead, while the AC-DC converter continues charging the battery whenever AC power is present. That is the same automatic-selection function the ’946 Patent claims for choosing between its fifth DC voltage (battery-derived) and sixth DC voltage (AC-derived) to operate the LED arrays.

Years before the alleged priority date of the ’946 Patent, ordinary artisans had already adapted this same dual-path, auto-selecting architecture specifically to solid-state luminaires and had already equipped it with a stand-alone test switch and a charge-status indicator. U.S. Patent Appl. Publ. No. 2013/0127362A1 to Trainor discloses an emergency lighting module for a solid-state luminaire that includes a microcontroller, an AC detector, and a push-button test switch,

where actuating the test switch for a short duration initiates a brief test of battery-powered operation and actuating it for a longer duration initiates a full run-down test on battery power, without requiring an external high-voltage test switch or interruption of the AC feed to the fixture. Trainor further discloses a status indicator using multiple LEDs to report distinct machine states, including AC present with the battery charging, AC present with the battery fully charged, a test in progress, running on battery power, and battery test failure, the same combination of a stand-alone push-button test switch and an LED-based charge and test indicator recited in the dependent claims of the ’946 Patent.

### C. U.S. Patent No. 10,645,782

The asserted claims of the ’782 Patent recite a conventional battery-backed LED luminaire architecture: a full-wave rectifier and input filter that convert the AC mains into a first DC voltage, a charging circuit that steps that voltage down to charge a rechargeable battery, an LED driving circuit that boosts the battery voltage into a first LED driving current to run the LED array when the AC mains is unavailable, a power supply unit that runs the LED array from the AC mains at full power with a second LED driving current when it is available, and a luminaire control circuit with a first switch circuit that gates discharging of the battery and a second switch circuit that gates charging of the battery. That architecture, including the auto-selecting dual-driver topology and the diode rectifiers that keep the two LED driving currents from cross-talking, has been the standard design for battery-backed LED lighting for years before the alleged priority date of the ’782 Patent, including in the very prior art cited on the face of the ’782 Patent itself: U.S. Patent No. 9,247,623 to Recker et al. (“Recker”) and U.S. Patent Appl. Publ. No. 2013/0127362A1 to Trainor et al. (“Trainor-II”). The remaining limitations, directed to a first switch circuit and a second switch circuit built from paired electronic switches (MOSFETs or BJTs) that separately

gate battery discharging and battery charging, describe a charge/discharge switch topology that was already in use in general rechargeable-battery power management, including in closely analogous power-management products as reflected in U.S. Patent No. 10,038,326 to Chen ("Chen-I") and U.S. Patent Appl. Publ. No. 2018/0062415A1 to Chen et al. ("Chen-II").

The "idea" of an LED light source that operates from the AC mains in normal use and automatically switches over to an internal rechargeable battery so that it keeps operating when AC power is lost or degraded was known well before the alleged priority date of the '782 Patent. By way of example only, Recker, cited on the face of the '782 Patent and directed to a switch-sensing emergency lighting power supply, discloses a wireless LED light bulb built around an AC/DC converter, a charging circuit with rechargeable batteries, and power selection and conditioning circuitry under the control of a programmable controller. Recker's controller monitors the presence and quality of the AC input, including brownout conditions, electrical surges, voltage sag, and other conditions that make continued AC operation undesirable, and automatically switches the light source and its control circuitry over to the batteries when AC power is unavailable or unacceptable, while the same charging circuit recharges the batteries whenever AC power is present. This is the same automatic selection between an AC-fed driving path and a battery-fed driving path that the asserted claims recite for choosing between the first LED driving current generated by the '782 Patent's LED driving circuit and the second LED driving current generated by its power supply unit.

Prior art confirms that separating a rechargeable battery's charging path from its discharging path behind independently controlled electronic switches, the same configuration recited in the '782 Patent's first and second switch circuits, was a known and general power-management technique well before the priority date. Chen discloses a power bank in which a first

power switch connects a charging circuit to a rechargeable battery to manage charging, and a second power switch connects a discharging circuit to the same battery to manage discharging, and either switch is capable of isolating the battery when a fault condition such as an over-temperature or over-current condition is detected. Chen-II discloses a mobile power supply in which paired transistor switches, driven by dedicated gate drivers under the control of a central processor, alternately couple a buck-boost circuit between an external charging supply and the battery or between the battery and an external load depending on a voltage comparison performed by the processor, the same paired-switch, sensed-voltage control scheme the ’782 Patent claims for the third and fourth electronic switches that bias and turn on its first and second electronic switches based on detected DC voltages.

Years before the alleged priority date of the ’782 Patent, ordinary artisans had already adapted this same battery-backed, auto-switching architecture to solid-state luminaires specifically, complete with the crosstalk-blocking and current-boosting circuitry the asserted claims recite. Trainor discloses an emergency lighting module for a solid-state luminaire in which a buck converter, built from an inductor, a switching transistor, a diode rectifier, and input and output capacitors, charges a backup battery from the luminaire’s own AC/DC converter, and a boost converter of the same construction steps the battery voltage up to drive the LED board when the AC input is lost, with the module’s battery-derived output and the AC/DC converter’s own output logic-OR’ed through diodes so that the higher of the two voltages reaches the LED board and neither path can back-feed the other, the same current-blocking-diode arrangement the ’782 Patent recites to keep its first and second LED driving currents from cross-talking. U.S. Patent Appl. Publ. No. 2015/0015076A1 to Park discloses a charging system and power-failure detecting device for an LED light that likewise combines an EMI filter, a current-rectifying diode, and a

step-up DC-DC converter that boosts the stored battery voltage to drive the LED module once a power failure detection and determination unit senses that external power has been interrupted or is reduced to a predetermined level or less, while the same converter charges the battery whenever external power is present, mirroring the ’782 Patent's combination of a full-wave rectifier, input filter, charging circuit, and step-up LED driving circuit within a single LED luminaire.

**D. U.S. Patent No. 11,172,551**

The ’551 Patent addresses a problem that the LED driver industry had been working on publicly for well over a decade before the application was filed: a conventional wall dimmer (*e.g.*, a TRIAC or SCR) needs a minimum holding current to stay conducting, but an efficient LED driver does not always draw sufficient holding current, and the lamp flickers as a result. The patent’s answer to that problem is not novel but is instead the same standard answer that had been taught in the prior art years earlier: put a resistor and capacitor across the input as a dummy load so current keeps flowing.

The asserted claims of the ’551 Patent thus recite a conventional TRIAC-compatible LED driver architecture built around three well-known building blocks: rectifying and filtering an AC signal from a TRIAC dimmer, processing the rectified and filtered signal with a switched mode power converter to drive an LED array, and keeping the TRIAC dimmer conducting with a resistor-capacitor “bypass circuit” that draws current. None of these driver components were unique at the time of the ’551 Patent’s May 2020 alleged priority date, nor was their combined use unique to dimmable LEDs, as confirmed by the prior art described herein that predate the ’551 Patent’s May 2020 alleged priority date by six or more years. Indeed, the structures that Plaintiff identifies in the alleged infringing devices had already been incorporated into commercial products offered for sale more than one year before the May 2020 priority date.

Rectifiers, filters, and power converters were ubiquitous in driver circuits, generally and not only for LED applications. Besides their mere incorporation into its LED drivers, the ’551 Patent adds nothing to these basic circuit components.

Lastly, the “idea” of drawing current to hold or sustain a TRIAC dimmer and keep the TRIAC dimmer functioning was known well before the 2020 priority date of the ’551 Patent. By way of example only, Chinese Patent CN 105722285 to Yan (application in 2014, grant in 2018) discloses an LED driving circuit for a TRIAC dimmer comprising a shunt circuit, comprising a resistor and capacitor in series, that provides latching and holding current to the TRIAC dimmer to prevent the dimmer from turning off and to avoid undesirable effects like flickering. U.S. Publication 2011/0309759 to Shteynberg also uses the same structure, a resistor and capacitor in series, also to provide latching and holding current for its dimmer, as does the driver in U.S. Publication 2014/0347894 to Sutardja.

**E. U.S. Patent No. 11,846,396**

The asserted claims of the ’396 Patent recite a conventional battery-backed linear LED lamp architecture: at least two electrical conductors that couple to a line voltage from the AC mains, one or more LED arrays, a rechargeable battery, a full-wave rectifier that converts the line voltage into a primary DC voltage, a bidirectional circuit of electronic switches that controls a forward (charging) current and a reverse (discharging) current to and from the battery, a boost converter circuit that converts the battery’s DC output into controllable energy pulses and then filters those pulses back into a regulated output voltage that drives the LED arrays as a first LED driving current, a fly-back converter circuit built around a transformer that generates a second LED driving current to run the LED arrays at full power from the AC mains, and a primary control circuit that governs the bidirectional circuit and enables the boost converter whenever a

rechargeable battery test is performed. That architecture, including the auto-selecting dual-driver topology and the boost-converter charge pump used to power LEDs from a backup battery, has been the standard design for battery-backed LED lighting for years before the alleged priority date of the ’396 Patent, including in the very prior art cited on the face of the ’396 Patent itself: U.S. Patent Appl. Publ. No. 2014/0240966A1 to Garcia et al. (“Garcia”) and U.S. Patent Appl. Publ. No. 2016/0328928A1 to Lutz (“Lutz”). The remaining limitations, directed to a self-diagnostic circuit with a test switch and a status indicator that reports the results of a rechargeable battery test, describe a self-testing scheme that was already in use in the patentee’s own field, including in the patentee's own earlier publication, U.S. Patent Appl. Publ. No. 2021/0159725A1 to Hsia (“Hsia-LVIII”).

The “idea” of an LED light source that runs from the AC mains in normal use and automatically draws on an internal rechargeable battery through a boost converter when the AC mains fails was known well before the alleged priority date of the ’396 Patent. By way of example only, Garcia, cited on the face of the ’396 Patent, discloses a supplemental and emergency lighting circuit built around a flyback primary circuit that rectifies and filters the AC input and charges a rechargeable battery assembly, together with a sensor and LED control circuit that detects loss of the AC-derived voltage and, on that loss, turns on a MOSFET so that battery current reaches a boost circuit. Garcia’s boost circuit takes the battery’s constant-voltage output and, using a pulse-width modulator switching an inductor and MOSFET, produces controllable pulses of energy that are filtered back into a regulated constant-current output comparable to the output of the normal LED driver, the same pulse-and-filter boost operation the ’396 Patent recites for its boost converter circuit and at least one capacitor. Garcia further discloses a triac and opto-triac control circuit that delays and can disable the normal AC-fed LED driver, and diodes that block current from feeding

back between the boost circuit and the normal driver, mirroring the ’396 Patent’s second control circuit and the diode-based isolation recited for its fly-back and boost driving paths. This is the same combination of an AC-fed driving path, a battery-fed boost-converter driving path, and a control circuit that selects between them that the asserted claims recite for the ’396 Patent's first and second LED driving currents.

Prior art confirms that automatically switching a solid-state light source between an AC-derived driving path and a battery-derived driving path, under the supervision of a controller that monitors the AC condition, was a known and general lighting technique well before the priority date. Lutz discloses a lamp device with two light sources, AC-driven LEDs that operate in a first mode when line power is present and DC LEDs powered from an internal battery that operate in a second mode when line power is interrupted, together with a signal amplifier that monitors the power condition at the AC input and a controller that uses that signal to decide which light source to energize. Lutz further discloses a battery charging system that varies its charging rate according to a sensed battery temperature and a battery-level sensor that reports a high, medium, or low battery condition to an indicator, the same battery-condition monitoring and reporting function performed by the ’396 Patent's primary control circuit and status indicator when performing a rechargeable battery test. This is the same automatic, controller-supervised selection between an AC-fed driving path and a battery-fed driving path that the asserted claims recite for choosing between the ’396 Patent's fly-back-converter-generated second LED driving current and its boost-converter-generated first LED driving current.

Years before the alleged priority date of the ’396 Patent, the patentee’s own earlier work had already adapted this same auto-switching, battery-backed architecture to solid-state luminaires specifically, complete with a self-diagnostic circuit that runs battery tests and reports the results.

Hsia-LVIII, a publication in the same patent family and by the same inventor as the ’396 Patent, discloses an LED luminaire with a normally operated portion powered from the AC mains and an emergency-operated portion comprising a rechargeable battery, a charging circuit, an LED driving circuit, and a self-diagnostic circuit built from a real-time clock, a control portion, and a test portion. Hsia-LVIII’s self-diagnostic circuit initiates a rechargeable battery test according to predetermined test schedules, with each test period beginning when the self-diagnostic circuit's output is activated to a logic-high level to enable the LED driving circuit and ending when that output drops to a logic-low level, using nominal test durations of 30 seconds and 90 minutes, the same activation-and-timeout test structure the ’396 Patent recites for its self-diagnostic circuit and its first and second time delays. Hsia-LVIII further discloses a test switch that manually initiates and terminates the battery test, a status indicator that reports the test results, and a peripheral circuit that samples a fraction of the battery’s terminal voltage for examination during the test period, the same combination of a test switch, a status indicator, and a fractional terminal-voltage test recited in the dependent claims of the ’396 Patent.

***

Further details regarding relevant design, functions, features, principles of operation, and optimization of LED lighting systems, widely known and available as of the respective priority dates of the Asserted Patents, are provided in the claim charts attached as A-1 to E-1 *et seq*. and the references and other evidence cited therein

## V. IDENTIFICATION OF PRIOR ART

Pursuant to Paragraph 3-3(a)(1) of Miscellaneous Order No. 62, and subject to RAB’S reservation of rights, RAB identifies each item of prior art that anticipates or renders obvious one or more of the Asserted Claims.

The tables provided in Section V.A.1 identify each prior-art patent by its number, country of origin, and date of issue. The tables provided in Section V.A.2 identify each prior-art publication by its title, date of publication, and, when feasible, author and publisher. The tables provided in Section V.A.3 identify each prior-art system or product currently known to RAB by, where possible, its name and date of sale, offer for sale, use, or public knowledge.

**A. Table 1: Prior Art Patents and Applications**

**U.S. Patent 10,225,905**

| Patent / Publication No. | Inventor(s) | Filing Date | Published / Issue Date | Short Name |
|---|---|---|---|---|
| U.S. Patent No. 9,998,004 | Thierry Sicard | 2017-07-10 | 2018-06-12 | Sicard |
| U.S. Patent No. 10,418,847 | Shiyu Liu<br>Alvaro Garcia<br>Zhihua Jian<br>Duoping Wang | 2016-05-03 | 2019-09-17 | Liu |
| CN 105722285 | Tiesheng Yan<br>Gingguan Guo<br>Xueshan Liu<br>Bingzhou Fang | 2014-12-04 | 2016-06-29 | Yan |
| U.S. Patent Appl. Publ. No. 2012/0104858 | Michel Noe | 2010-05-26 | 2012-05-03 | Noe |
| U.S. Patent Appl. Publ. No. 2007/0138971 | Liang Chen | 2007-02-15 | 2007-06-21 | Chen-III |
| U.S. Patent Appl. Publ. No. 2007/0296277 | Kye Nam Lee<br>Young Jin Park<br>Jin Hung Kim<br>Hyun Kyu Yang<br>Yoo Ran Kim | 2007-06-27 | 2007-12-27 | Lee-II |
| U.S. Patent No. 2009/0237919 | Chun-Wei Wang | 2008-11-30 | 2009-09-24 | Wang-I |
| U.S. Patent Appl. Publ. No. 2010/0277067 | Fredric Maxik<br>David Henderson | 2010-04-29 | 2010-11-04 | Maxik |

| Patent / Publication No. | Inventor(s) | Filing Date | Published / Issue Date | Short Name |
|---|---|---|---|---|
| | Addy Widjaja | | | |
| U.S. Patent Appl. Publ. No. 2012/0181952 | Norbert Roeer | 2011-02-11 | 2012-07-19 | Roeer |
| U.S. Patent Appl. Publ. No. 2013/0003419 | Li-Chun Lai | 2011-06-29 | 2013-01-03 | Lai |
| U.S. Patent Appl. Publ. No. 2013/0181624 | Douglas Min Kang | 2012-01-13 | 2013-07-18 | Kang |
| U.S. Patent Appl. Publ. No. 2015/0155735 | Gorou Mori<br>Fumihito Inukai<br>Toshinobu Nagasawa | 2015-02-06 | 2015-06-04 | Mori |
| U.S. Patent Appl. Publ. No. 2016/0141906 | Duck Young Jung | 2014-05-19 | 2016-05-19 | Jung |
| U.S. Patent Appl. Publ. No. 2017/0051886 | Shiyu Liu<br>Alvaro Garcia<br>Zhihua Jian<br>Duoping Wang | 2016-05-03 | 2017-02-23 | Liu-II |
| U.S. Patent Appl. Publ. No. 2017/0244239 | Kyong-Pil Jin<br>Myung-Sang Lee | 2017-01-27 | 2017-08-24 | Jin |
| U.S. Patent Appl. Publ. No. 2017/0279300 | Anthony Catalano<br>Steven Davis<br>Charles Teplin<br>Anthony McDougle | 2017-03-08 | 2017-09-28 | Catalano |
| U.S. Patent Appl. Publ. No. 2017/0310160 | Yehua Wan<br>Lifeng Ling<br>Songan Ye<br>Jinxiang Shen | 2016-07-11 | 2017-10-26 | Wan |
| U.S. Patent Appl. Publ. No. 2018/0058677 | En-Min Wu<br>Hsien-Chih Ho | 2017-08-23 | 2018-03-01 | Wu |
| U.S. Patent Appl. Publ. No. 2019/0006869 | Huan-Hsian Huang<br>Chen-Chi Lin | 2017-09-05 | 2019-01-03 | Huang |
| JP 2016042756 | Koji Komata | 2014-08-18 | 2016-03-31 | Komata |

| Patent / Publication No. | Inventor(s) | Filing Date | Published / Issue Date | Short Name |
|---|---|---|---|---|
| | Tomohiro Shiraki<br>Ryusuke Yamaguchi<br>Hideaki Iwadate<br>Shinichi Nozuki<br>Yuya Yamazaki | | | |
| U.S. Patent No. 4,751,398 | Alexander Ertz, III | 1986-03-18 | 1988-06-14 | Ertz |
| U.S. Patent No. 4,888,821 | Charles Hamp, III<br>Paul Weindorf | 1988-12-09 | 1989-12-19 | Hamp |
| U.S. Patent No. 5,386,148 | David Fiori | 1992-05-08 | 1995-01-31 | Fiori |
| U.S. Patent No. 5,631,814 | Alexander Zak | 1995-06-16 | 1997-05-20 | Zak |
| U.S. Patent No. 6,502,044 | John Evan Lane<br>Richard Farthing | 1999-07-12 | 2002-12-31 | Lane |
| U.S. Patent No. 6,795,322 | Nobuyuki Aihara<br>Takeshi Onaka<br>Norikazu Tokunaga<br>Kenichi Onda<br>Satoru Masuyama<br>Shigekazu Zemba | 1999-12-22 | 2004-09-21 | Aihara |
| U.S. Patent No. 6,957,048 | Jose Antonio Viera Formenti | 2002-04-16 | 2005-10-18 | Formenti |
| U.S. Patent No. 7,084,582 | Nicolas Buonocunto | 2004-08-27 | 2006-08-01 | Buonocunto |
| U.S. Patent No. 7,550,873 | Ming Jiang<br>Min Shi | 2007-01-28 | 2009-06-23 | Jiang |
| U.S. Patent No. 7,902,769 | Anatoly Shteynberg<br>Harry Rodriguez | 2007-01-19 | 2011-03-08 | Shteynberg |
| U.S. Patent No. 7,977,913 | Eng Soon Dave Tan | 2005-11-18 | 2011-07-12 | Tan |

| Patent / Publication No. | Inventor(s) | Filing Date | Published / Issue Date | Short Name |
|---|---|---|---|---|
| | Kwang Sheun Tham<br>Wah Swee Tan | | | |
| U.S. Patent No. 8,278,832 | Chen-Ming Hung<br>Maung Maung Win<br>Lan-Ting Hsu<br>Chih-Yuan Hsieh | 2009-11-23 | 2012-10-02 | Hung |
| U.S. Patent No. 8,779,676 | Victor Simi | 2011-08-31 | 2014-07-15 | Simi |
| U.S. Patent No. 9,078,308 | Nicolas Williams | 2012-03-28 | 2015-07-07 | Williams |
| U.S. Patent No. 9,119,254 | Yi-Wei Lee<br>Isaac Chen<br>Tong-Cheng Jao<br>Cien-Yang Chen | 2014-12-11 | 2015-08-25 | Lee-I |
| U.S. Patent No. 9,247,623 | Michael Recker<br>David Levine | 2011-09-28 | 2016-01-26 | Recker |
| U.S. Patent No. 9,369,050 | Wei Xiong<br>Travis Berry<br>Keith Davis | 2015-01-27 | 2016-06-14 | Xiong |
| U.S. Patent No. 9,401,615 | Satoshi Abe<br>Atsushi Sakurai | 2014-09-17 | 2016-07-26 | Abe |
| U.S. Patent No. 9,515,519 | Ig Soo Kwon | 2015-12-18 | 2016-12-06 | Kwon |
| U.S. Patent No. 9,648,676 | Christian Angeles<br>Jose Requinton Del Carmen, Jr. | 2014-09-26 | 2017-05-09 | Angeles-I |
| U.S. Patent No. 9,788,371 | Yijun Zhao | 2014-04-04 | 2017-10-10 | Zhao |
| U.S. Patent No. 9,954,390 | Xiaohong Chen<br>David Ci | 2013-05-30 | 2018-04-24 | Ci |
| U.S. Patent No. 10,027,166 | Yifeng Qiu | 2017-10-11 | 2018-07-17 | Qiu |

| Patent / Publication No. | Inventor(s) | Filing Date | Published / Issue Date | Short Name |
|---|---|---|---|---|
| U.S. Patent No. 10,038,326 | Penghui Chen | 2016-04-19 | 2018-07-31 | Chen-I |
| U.S. Patent No. 10,057,947 | Ian Wilson | 2017-04-12 | 2018-08-21 | Wilson-I |
| U.S. Patent No. 10,148,099 | Kimmo Kyllonen<br>John Seliski | 2016-06-23 | 2018-12-04 | Kyllonen |
| U.S. Patent No. 10,333,344 | John Luk | 2017-02-21 | 2019-06-25 | Luk |
| U.S. Patent No. 10,375,785 | Zhuoyan Li<br>Liqiang Zhu<br>Xueyou Ling<br>Jun Zhou<br>Lieyi Fang | 2017-12-20 | 2019-08-06 | Li |
| U.S. Patent No. 10,483,793 | Ian Wilson<br>Cristiano De Menezes | 2016-02-23 | 2019-11-19 | Wilson-II |
| U.S. Patent No. 4,977,351 | Joseph Bavaro | 1988-02-22 | 1990-12-11 | Bavaro |
| EP 1,507,327 | Michel Noé<br>Patrick Serru | 2004-08-13 | 2005-02-16 | Noé |
| CN 202218458 | Ouyang Kejia<br>Liao Fengjie<br>Wu Feirui | 2011-08-22 | 2012-05-09 | Kejia |
| U.S. Patent No. 4,628,438 | Herbert Montague | 1983-12-16 | 1986-12-09 | Montague |
| U.S. Patent No. 4,742,290 | Richard Sutphin<br>Steven Bell<br>Kurt Monsell | 1986-06-02 | 1988-05-03 | Sutphin |
| U.S. Patent No. 6,330,176 | Guy Thrap<br>Dinesh Shah | 2000-11-15 | 2001-12-11 | Thrap |
| U.S. Patent No. 2009/0237919 | Chun-Wei Wang | 2008-11-30 | 2009-09-24 | Wang-I |
| U.S. Patent No. 10,020,675 | Kanghong Zhang | 2017-06-23 | 2018-07-10 | Zhang |

| Patent / Publication No. | Inventor(s) | Filing Date | Published / Issue Date | Short Name |
|---|---|---|---|---|
| U.S. Patent Appl. Publ. No. 2014/0300289 | Yan Zhu | 2014-03-13 | 2014-10-09 | Zhu |
| U.S. Patent Appl. Publ. No. 2013/0147376 | John Trainor<br>James McBryde<br>Randall Powers<br>Joseph Chobot | 2012-05-08 | 2013-06-13 | Trainor |
| U.S. Patent Appl. Publ. No. 2016/0329742 | Neil Singer<br>John Granata<br>Kenneth Pasch | 2016-07-19 | 2016-11-10 | Singer |
| U.S. Patent Appl. Publ. No. 2012/0181952 | Norbert Roeer | 2011-02-11 | 2012-07-19 | Roeer |
| U.S. Patent No. 8,450,976 | Laszlo Lipcsei<br>Catalin Popovici<br>Alin Gherghescu | 2010-10-29 | 2013-05-28 | Lipcsei |
| U.S. Patent Appl. Publ. No. 2013/0335959 | Chungho Hsia<br>Pai-Sheng Shen | 2012-06-15 | 2013-12-19 | Hsia-I |
| U.S. Patent No. 8,749,167 | Chungho Hsia<br>Pai-Sheng Shen | 2012-06-15 | 2014-06-10 | Hsia-II |
| U.S. Patent Appl. Publ. No. 2014/0104824 | Chungho Hsia<br>Pai-Sheng Shen | 2013-12-19 | 2014-04-17 | Hsia-III |
| U.S. Patent No. 9,163,818 | Chungho Hsia<br>Pai-Sheng Shen | 2013-12-19 | 2015-10-20 | Hsia-IV |
| U.S. Patent Appl. Publ. No. 2015/0181661 | Chungho Hsia<br>Pai-Sheng Shen | 2014-08-21 | 2015-06-25 | Hsia-V |
| U.S. Patent No. 9,277,603 | Chungho Hsia<br>Pai-Sheng Shen | 2014-08-21 | 2016-03-01 | Hsia-VI |
| U.S. Patent Appl. Publ. No. 2015/0223303 | Chungho Hsia<br>Pai-Sheng Shen | 2015-04-16 | 2015-08-06 | Hsia-VII |
| U.S. Patent No. 9,288,867 | Chungho Hsia<br>Pai-Sheng Shen | 2015-04-16 | 2016-03-15 | Hsia-VIII |
| U.S. Patent No. 9,420,663 | Chungho Hsia<br>Alan Lin<br>Cheri Qin | 2015-08-04 | 2016-08-16 | Hsia-IX |

| Patent / Publication No. | Inventor(s) | Filing Date | Published / Issue Date | Short Name |
|---|---|---|---|---|
| U.S. Patent Appl. Publ. No. 2016/0345403 | Chungho Hsia | 2016-08-01 | 2016-11-24 | Hsia-X |
| U.S. Patent No. 9,743,484 | Chungho Hsia | 2016-08-01 | 2017-08-22 | Hsia-XI |
| U.S. Patent Appl. Publ. No. 2017/0079115 | Chungho Hsia | 2016-11-28 | 2017-03-16 | Hsia-XII |
| U.S. Patent Appl. Publ. No. 2017/0171937 | Chungho Hsia | 2017-02-28 | 2017-06-15 | Hsia-XIII |

**1. U.S. Patent 10,237,946**

| Patent / Publication No. | Inventor(s) | Filing Date | Published / Issue Date | Short Name |
|---|---|---|---|---|
| U.S. Patent No. 5,631,814 | Alexander Zak | 1995-06-13 | 1997-05-20 | Zak |
| U.S. Patent No. 10,418,847 | Shiyu Liu<br>Alvaro Garcia<br>Zhihua Jian<br>Duoping Wang | 2016-05-03 | 2019-09-17 | Liu |
| U.S. Patent No. 9,998,004 | Thierry Sicard | 2017-07-10 | 2018-06-12 | Sicard |
| U.S. Patent Appl. Publ. No. 2012/0104858 | Michel Noe | 2010-05-26 | 2012-05-03 | Noe |
| U.S. Patent Appl. Publ. No. 2007/0138971 | Liang Chen | 2007-02-15 | 2007-06-21 | Chen-III |
| U.S. Patent Appl. Publ. No. 2007/0296277 | Kye Nam Lee<br>Young Jin Park<br>Jin Hung Kim<br>Hyun Kyu Yang<br>Yoo Ran Kim | 2007-06-27 | 2007-12-27 | Lee-II |
| U.S. Patent No. 2009/0237919 | Chun-Wei Wang | 2008-11-30 | 2009-09-24 | Wang-I |
| U.S. Patent Appl. Publ. No. 2010/0277067 | Fredric Maxik<br>David Henderson<br>Addy Widjaja | 2010-04-29 | 2010-11-04 | Maxik |

| | | | | |
|---|---|---|---|---|
| U.S. Patent Appl. Publ. No. 2012/0181952 | Norbert Roeer | 2011-02-11 | 2012-07-19 | Roeer |
| U.S. Patent Appl. Publ. No. 2013/0003419 | Li-Chun Lai | 2011-06-29 | 2013-01-03 | Lai |
| U.S. Patent Appl. Publ. No. 2013/0181624 | Douglas Min Kang | 2012-01-13 | 2013-07-18 | Kang |
| U.S. Patent Appl. Publ. No. 2015/0155735 | Gorou Mori<br>Fumihito Inukai<br>Toshinobu Nagasawa | 2015-02-06 | 2015-06-04 | Mori |
| U.S. Patent Appl. Publ. No. 2016/0141906 | Duck Young Jung | 2014-05-19 | 2016-05-19 | Jung |
| U.S. Patent Appl. Publ. No. 2017/0051886 | Shiyu Liu<br>Alvaro Garcia<br>Zhihua Jian<br>Duoping Wang | 2016-05-03 | 2017-02-23 | Liu-II |
| U.S. Patent Appl. Publ. No. 2017/0244239 | Kyong-Pil Jin<br>Myung-Sang Lee | 2017-01-27 | 2017-08-24 | Jin |
| U.S. Patent Appl. Publ. No. 2017/0279300 | Anthony Catalano<br>Steven Davis<br>Charles Teplin<br>Anthony McDougle | 2017-03-08 | 2017-09-28 | Catalano |
| U.S. Patent Appl. Publ. No. 2017/0310160 | Yehua Wan<br>Lifeng Ling<br>Songan Ye<br>Jinxiang Shen | 2016-07-11 | 2017-10-26 | Wan |
| U.S. Patent Appl. Publ. No. 2018/0058677 | En-Min Wu<br>Hsien-Chih Ho | 2017-08-23 | 2018-03-01 | Wu |
| U.S. Patent Appl. Publ. No. 2019/0006869 | Huan-Hsian Huang<br>Chen-Chi Lin | 2017-09-05 | 2019-01-03 | Huang |
| CN 105722285 | Tiesheng Yan<br>Gingguan Guo<br>Xueshan Liu<br>Bingzhou Fang | 2014-12-04 | 2016-06-29 | Yan |
| JP 2016042756 | Koji Komata | 2014-08-18 | 2016-03-31 | Komata |

| | | | | |
|---|---|---|---|---|
| | Tomohiro Shiraki<br>Ryusuke Yamaguchi<br>Hideaki Iwadate<br>Shinichi Nozuki<br>Yuya Yamazaki | | | |
| U.S. Patent No. 4,751,398 | Alexander Ertz, III | 1986-03-18 | 1988-06-14 | Ertz |
| U.S. Patent No. 4,888,821 | Charles Hamp, III<br>Paul Weindorf | 1988-12-09 | 1989-12-19 | Hamp |
| U.S. Patent No. 5,386,148 | David Fiori | 1992-05-08 | 1995-01-31 | Fiori |
| U.S. Patent No. 5,631,814 | Alexander Zak | 1995-06-16 | 1997-05-20 | Zak |
| U.S. Patent No. 6,502,044 | John Evan Lane<br>Richard Farthing | 1999-07-12 | 2002-12-31 | Lane |
| U.S. Patent No. 6,795,322 | Nobuyuki Aihara<br>Takeshi Onaka<br>Norikazu Tokunaga<br>Kenichi Onda<br>Satoru Masuyama<br>Shigekazu Zemba | 1999-12-22 | 2004-09-21 | Aihara |
| U.S. Patent No. 6,957,048 | Jose Antonio Viera Formenti | 2002-04-16 | 2005-10-18 | Formenti |
| U.S. Patent No. 7,084,582 | Nicolas Buonocunto | 2004-08-27 | 2006-08-01 | Buonocunto |
| U.S. Patent No. 7,550,873 | Ming Jiang<br>Min Shi | 2007-01-28 | 2009-06-23 | Jiang |
| U.S. Patent No. 7,902,769 | Anatoly Shteynberg<br>Harry Rodriguez | 2007-01-19 | 2011-03-08 | Shteynberg-I |
| U.S. Patent No. 7,977,913 | Eng Soon Dave Tan<br>Kwang Sheun Tham<br>Wah Swee Tan | 2005-11-18 | 2011-07-12 | Tan |

| | | | | |
|---|---|---|---|---|
| U.S. Patent No. 8,278,832 | Chen-Ming Hung<br>Maung Maung Win<br>Lan-Ting Hsu<br>Chih-Yuan Hsieh | 2009-11-23 | 2012-10-02 | Hung |
| U.S. Patent No. 8,779,676 | Victor Simi | 2011-08-31 | 2014-07-15 | Simi |
| U.S. Patent No. 9,078,308 | Nicolas Williams | 2012-03-28 | 2015-07-07 | Williams |
| U.S. Patent No. 9,119,254 | Yi-Wei Lee<br>Isaac Chen<br>Tong-Cheng Jao<br>Cien-Yang Chen | 2014-12-11 | 2015-08-25 | Lee-I |
| U.S. Patent No. 9,247,623 | Michael Recker<br>David Levine | 2011-09-28 | 2016-01-26 | Recker |
| U.S. Patent No. 9,369,050 | Wei Xiong<br>Travis Berry<br>Keith Davis | 2015-01-27 | 2016-06-14 | Xiong |
| U.S. Patent No. 9,401,615 | Satoshi Abe<br>Atsushi Sakurai | 2014-09-17 | 2016-07-26 | Abe |
| U.S. Patent No. 9,515,519 | Ig Soo Kwon | 2015-12-18 | 2016-12-06 | Kwon |
| U.S. Patent No. 9,648,676 | Christian Angeles<br>Jose Requinton Del Carmen, Jr. | 2014-09-26 | 2017-05-09 | Angeles-I |
| U.S. Patent No. 9,788,371 | Yijun Zhao | 2014-04-04 | 2017-10-10 | Zhao |
| U.S. Patent No. 9,954,390 | Xiaohong Chen<br>David Ci | 2013-05-30 | 2018-04-24 | Ci |
| U.S. Patent No. 10,027,166 | Yifeng Qiu | 2017-10-11 | 2018-07-17 | Qiu |
| U.S. Patent No. 10,038,326 | Penghui Chen | 2016-04-19 | 2018-07-31 | Chen-I |
| U.S. Patent No. 10,057,947 | Ian Wilson | 2017-04-12 | 2018-08-21 | Wilson-I |
| U.S. Patent No. 10,148,099 | Kimmo Kyllonen<br>John Seliski | 2016-06-23 | 2018-12-04 | Kyllonen |

| | | | | |
|---|---|---|---|---|
| U.S. Patent No. 10,333,344 | John Luk | 2017-02-21 | 2019-06-25 | Luk |
| U.S. Patent No. 10,375,785 | Zhuoyan Li<br>Liqiang Zhu<br>Xueyou Ling<br>Jun Zhou<br>Lieyi Fang | 2017-12-20 | 2019-08-06 | Li |
| U.S. Patent No. 10,483,793 | Ian Wilson<br>Cristiano De Menezes | 2016-02-23 | 2019-11-19 | Wilson-II |
| U.S. Patent No. 6,330,176 | Guy Thrap<br>Dinesh Shah | 2000-11-15 | 2001-12-11 | Thrap |
| U.S. Patent Appl. Publ. 2013/0127362 | John Trainor<br>James McBryde<br>Randell Powere<br>Michael James Harris<br>Patrick O'Flaherly | 2012-05-08 | 2013-05-23 | Trainor-II |
| U.S. Patent No. 6,795,322 | Nobuyuki Aihara<br>Takeshi Onaka<br>Norikazu Tokunaga<br>Kenichi Onda<br>Satoru Masuyama<br>Shigekazu Zemba | 1999-12-22 | 2004-09-21 | Aihara |
| U.S. Patent No. 7,550,873 | Ming Jiang<br>Min Shi | 2007-07-31 | 2009-06-23 | Jiang |
| U.S. Patent No. 10,020,675 | Kanghong Zhang | 2017-06-23 | 2018-07-10 | Zhang |
| U.S. Patent No. 2014/0300289 | Yan Zhu | 2014-03-13 | 2014-10-09 | Zhu |
| U.S. Patent No. 2013/0147376 | John Trainor<br>James McBryde<br>Randall Powers<br>Joseph Chobot | 2012-05-08 | 2013-06-13 | Trainor |
| U.S. Patent No. 8,450,976 | Laszlo Lipcsei<br>Catalin Popovici | 2010-10-29 | 2013-05-28 | Lipcsei |

| | | | | |
|---|---|---|---|---|
| | Alin Gherghescu | | | |
| U.S. Patent Appl. Publ. No. 2013/0335959 | Chungho Hsia<br>Pai-Sheng Shen | 2012-06-15 | 2013-12-19 | Hsia-I |
| U.S. Patent No. 8,749,167 | Chungho Hsia<br>Pai-Sheng Shen | 2012-06-15 | 2014-06-10 | Hsia-II |
| U.S. Patent Appl. Publ. No. 2014/0104824 | Chungho Hsia<br>Pai-Sheng Shen | 2013-12-19 | 2014-04-17 | Hsia-III |
| U.S. Patent No. 9,163,818 | Chungho Hsia<br>Pai-Sheng Shen | 2013-12-19 | 2015-10-20 | Hsia-IV |
| U.S. Patent Appl. Publ. No. 2015/0181661 | Chungho Hsia<br>Pai-Sheng Shen | 2014-08-21 | 2015-06-25 | Hsia-V |
| U.S. Patent No. 9,277,603 | Chungho Hsia<br>Pai-Sheng Shen | 2014-08-21 | 2016-03-01 | Hsia-VI |
| U.S. Patent Appl. Publ. No. 2015/0223303 | Chungho Hsia<br>Pai-Sheng Shen | 2015-04-16 | 2015-08-06 | Hsia-VII |
| U.S. Patent No. 9,288,867 | Chungho Hsia<br>Pai-Sheng Shen | 2015-04-16 | 2016-03-15 | Hsia-VIII |
| U.S. Patent No. 9,420,663 | Chungho Hsia<br>Alan Lin<br>Cheri Qin | 2015-08-04 | 2016-08-16 | Hsia-IX |
| U.S. Patent Appl. Publ. No. 2016/0345403 | Chungho Hsia | 2016-08-01 | 2016-11-24 | Hsia-X |
| U.S. Patent No. 9,743,484 | Chungho Hsia | 2016-08-01 | 2017-08-22 | Hsia-XI |
| U.S. Patent Appl. Publ. No. 2017/0079115 | Chungho Hsia | 2016-11-28 | 2017-03-16 | Hsia-XII |
| U.S. Patent Appl. Publ. No. 2017/0171937 | Chungho Hsia | 2017-02-28 | 2017-06-15 | Hsia-XIII |
| U.S. Patent No. 9,826,595 | Chungho Hsia | 2017-02-28 | 2017-11-21 | Hsia-XIV |
| U.S. Patent Appl. Publ. No. 2017/0311397 | Chungho Hsia | 2017-07-13 | 2017-10-26 | Hsia-XV |

### 2. U.S. Patent 10,645,782

| Patent / Publication No. | Inventor(s) | Filing Date | Published / Issue Date | Short Name |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| U.S. Patent No. 9,247,623 | Michael Recker<br>David Levine | 2011-09-28 | 2016-01-26 | Recker |
| U.S. Patent No. 10,418,847 | Shiyu Liu<br>Alvaro Garcia<br>Zhihua Jian<br>Duoping Wang | 2016-05-03 | 2019-09-17 | Liu |
| U.S. Patent No. 9,998,004 | Thierry Sicard | 2017-07-10 | 2018-06-12 | Sicard |
| U.S. Patent Appl. Publ. No. 2012/0104858 | Michel Noe | 2010-05-26 | 2012-05-03 | Noe |
| U.S. Patent Appl. Publ. No. 2007/0138971 | Liang Chen | 2007-02-15 | 2007-06-21 | Chen-III |
| U.S. Patent Appl. Publ. No. 2007/0296277 | Kye Nam Lee<br>Young Jin Park<br>Jin Hung Kim<br>Hyun Kyu Yang<br>Yoo Ran Kim | 2007-06-27 | 2007-12-27 | Lee-II |
| U.S. Patent No. 2009/0237919 | Chun-Wei Wang | 2008-11-30 | 2009-09-24 | Wang-I |
| U.S. Patent Appl. Publ. No. 2010/0277067 | Fredric Maxik<br>David Henderson<br>Addy Widjaja | 2010-04-29 | 2010-11-04 | Maxik |
| U.S. Patent Appl. Publ. No. 2012/0181952 | Norbert Roeer | 2011-02-11 | 2012-07-19 | Roeer |
| U.S. Patent Appl. Publ. No. 2013/0003419 | Li-Chun Lai | 2011-06-29 | 2013-01-03 | Lai |
| U.S. Patent Appl. Publ. No. 2013/0181624 | Douglas Min Kang | 2012-01-13 | 2013-07-18 | Kang |
| U.S. Patent Appl. Publ. No. 2015/0155735 | Gorou Mori<br>Fumihito Inukai<br>Toshinobu Nagasawa | 2015-02-06 | 2015-06-04 | Mori |
| U.S. Patent Appl. Publ. No. 2016/0141906 | Duck Young Jung | 2014-05-19 | 2016-05-19 | Jung |
| U.S. Patent Appl. Publ. No. 2017/0051886 | Shiyu Liu<br>Alvaro Garcia<br>Zhihua Jian | 2016-05-03 | 2017-02-23 | Liu-II |

| | | | | |
|---|---|---|---|---|
| | Duoping Wang | | | |
| U.S. Patent Appl. Publ. No. 2017/0244239 | Kyong-Pil Jin<br>Myung-Sang Lee | 2017-01-27 | 2017-08-24 | Jin |
| U.S. Patent Appl. Publ. No. 2017/0279300 | Anthony Catalano<br>Steven Davis<br>Charles Teplin<br>Anthony McDougle | 2017-03-08 | 2017-09-28 | Catalano |
| U.S. Patent Appl. Publ. No. 2017/0310160 | Yehua Wan<br>Lifeng Ling<br>Songan Ye<br>Jinxiang Shen | 2016-07-11 | 2017-10-26 | Wan |
| U.S. Patent Appl. Publ. No. 2018/0058677 | En-Min Wu<br>Hsien-Chih Ho | 2017-08-23 | 2018-03-01 | Wu |
| U.S. Patent Appl. Publ. No. 2019/0006869 | Huan-Hsian Huang<br>Chen-Chi Lin | 2017-09-05 | 2019-01-03 | Huang |
| CN 105722285 | Tiesheng Yan<br>Gingguan Guo<br>Xueshan Liu<br>Bingzhou Fang | 2014-12-04 | 2016-06-29 | Yan |
| JP 2016042756 | Koji Komata<br>Tomohiro Shiraki<br>Ryusuke Yamaguchi<br>Hideaki Iwadate<br>Shinichi Nozuki<br>Yuya Yamazaki | 2014-08-18 | 2016-03-31 | Komata |
| U.S. Patent No. 4,751,398 | Alexander Ertz, III | 1986-03-18 | 1988-06-14 | Ertz |
| U.S. Patent No. 4,888,821 | Charles Hamp, III<br>Paul Weindorf | 1988-12-09 | 1989-12-19 | Hamp |
| U.S. Patent No. 5,386,148 | David Fiori | 1992-05-08 | 1995-01-31 | Fiori |
| U.S. Patent No. 5,631,814 | Alexander Zak | 1995-06-16 | 1997-05-20 | Zak |

| | | | | |
|---|---|---|---|---|
| U.S. Patent No. 6,502,044 | John Evan Lane<br>Richard Farthing | 1999-07-12 | 2002-12-31 | Lane |
| U.S. Patent No. 6,795,322 | Nobuyuki Aihara<br>Takeshi Onaka<br>Norikazu Tokunaga<br>Kenichi Onda<br>Satoru Masuyama<br>Shigekazu Zemba | 1999-12-22 | 2004-09-21 | Aihara |
| U.S. Patent No. 6,957,048 | Jose Antonio Viera Formenti | 2002-04-16 | 2005-10-18 | Formenti |
| U.S. Patent No. 7,084,582 | Nicolas Buonocunto | 2004-08-27 | 2006-08-01 | Buonocunto |
| U.S. Patent No. 7,550,873 | Ming Jiang<br>Min Shi | 2007-01-28 | 2009-06-23 | Jiang |
| U.S. Patent No. 7,902,769 | Anatoly Shteynberg<br>Harry Rodriguez | 2007-01-19 | 2011-03-08 | Shteynberg-I |
| U.S. Patent No. 7,977,913 | Eng Soon Dave Tan<br>Kwang Sheun Tham<br>Wah Swee Tan | 2005-11-18 | 2011-07-12 | Tan |
| U.S. Patent No. 8,278,832 | Chen-Ming Hung<br>Maung Maung Win<br>Lan-Ting Hsu<br>Chih-Yuan Hsieh | 2009-11-23 | 2012-10-02 | Hung |
| U.S. Patent No. 8,779,676 | Victor Simi | 2011-08-31 | 2014-07-15 | Simi |
| U.S. Patent No. 9,078,308 | Nicolas Williams | 2012-03-28 | 2015-07-07 | Williams |
| U.S. Patent No. 9,119,254 | Yi-Wei Lee<br>Isaac Chen<br>Tong-Cheng Jao<br>Cien-Yang Chen | 2014-12-11 | 2015-08-25 | Lee-I |

| | | | | |
|---|---|---|---|---|
| U.S. Patent No. 9,247,623 | Michael Recker<br>David Levine | 2011-09-28 | 2016-01-26 | Recker |
| U.S. Patent No. 9,369,050 | Wei Xiong<br>Travis Berry<br>Keith Davis | 2015-01-27 | 2016-06-14 | Xiong |
| U.S. Patent No. 9,401,615 | Satoshi Abe<br>Atsushi Sakurai | 2014-09-17 | 2016-07-26 | Abe |
| U.S. Patent No. 9,515,519 | Ig Soo Kwon | 2015-12-18 | 2016-12-06 | Kwon |
| U.S. Patent No. 9,648,676 | Christian Angeles<br>Jose Requinton Del Carmen, Jr. | 2014-09-26 | 2017-05-09 | Angeles-I |
| U.S. Patent No. 9,788,371 | Yijun Zhao | 2014-04-04 | 2017-10-10 | Zhao |
| U.S. Patent No. 9,954,390 | Xiaohong Chen<br>David Ci | 2013-05-30 | 2018-04-24 | Ci |
| U.S. Patent No. 10,027,166 | Yifeng Qiu | 2017-10-11 | 2018-07-17 | Qiu |
| U.S. Patent No. 10,038,326 | Penghui Chen | 2016-04-19 | 2018-07-31 | Chen-I |
| U.S. Patent No. 10,057,947 | Ian Wilson | 2017-04-12 | 2018-08-21 | Wilson-I |
| U.S. Patent No. 10,148,099 | Kimmo Kyllonen<br>John Seliski | 2016-06-23 | 2018-12-04 | Kyllonen |
| U.S. Patent No. 10,333,344 | John Luk | 2017-02-21 | 2019-06-25 | Luk |
| U.S. Patent No. 10,375,785 | Zhuoyan Li<br>Liqiang Zhu<br>Xueyou Ling<br>Jun Zhou<br>Lieyi Fang | 2017-12-20 | 2019-08-06 | Li |
| U.S. Patent No. 10,483,793 | Ian Wilson<br>Cristiano De Menezes | 2016-02-23 | 2019-11-19 | Wilson-II |
| U.S. Patent Appl. Publ. No. 2013/0127362 | John Trainor<br>James McBryde | 2012-05-08 | 2013-05-23 | Trainor-II |

| | | | | |
|---|---|---|---|---|
| | Randell Powere<br>Michael James Harris<br>Patrick O'Flaherly | | | |
| U.S. Patent No. 10,038,326 | Penghui Chen | 2016-04-19 | 2018-07-31 | Chen-I |
| U.S. Patent Appl. Publ. No. 2018/0062415 | Penghui Chen<br>Xiaoshuang Yu | 2017-01-23 | 2018-03-01 | Chen-II |
| U.S. Patent Appl. Publ. No. 2015/0015076 | Seonghoon Park | 2014-08-06 | 2015-01-15 | Park |
| U.S. Patent Appl. Publ. No. 2015/0214785 | Shukla Jagitpati<br>Ian Wilson | 2013-08-21 | 2015-07-30 | Jagjitpati |
| U.S. Patent Appl. Publ. No. 2014/0300289 | Yan Zhu | 2014-03-13 | 2014-10-09 | Zhu |
| U.S. Patent Appl. Publ. No. 2013/0147376 | John Trainor<br>James McBryde<br>Randall Powers<br>Joseph Chobot | 2012-05-08 | 2013-06-13 | Trainor |
| U.S. Patent No. 8,450,976 | Laszlo Lipcsei<br>Catalin Popovici<br>Alin Gherghescu | 2010-10-29 | 2013-05-28 | Lipcsei |
| U.S. Patent Appl. Publ. No. 2013/0335959 | Chungho Hsia<br>Pai-Sheng Shen | 2012-06-15 | 2013-12-19 | Hsia-I |
| U.S. Patent No. 8,749,167 | Chungho Hsia<br>Pai-Sheng Shen | 2012-06-15 | 2014-06-10 | Hsia-II |
| U.S. Patent Appl. Publ. No. 2014/0104824 | Chungho Hsia<br>Pai-Sheng Shen | 2013-12-19 | 2014-04-17 | Hsia-III |
| U.S. Patent No. 9,163,818 | Chungho Hsia<br>Pai-Sheng Shen | 2013-12-19 | 2015-10-20 | Hsia-IV |
| U.S. Patent Appl. Publ. No. 2015/0181661 | Chungho Hsia<br>Pai-Sheng Shen | 2014-08-21 | 2015-06-25 | Hsia-V |
| U.S. Patent No. 9,277,603 | Chungho Hsia<br>Pai-Sheng Shen | 2014-08-21 | 2016-03-01 | Hsia-VI |
| U.S. Patent Appl. Publ. No. 2015/0223303 | Chungho Hsia<br>Pai-Sheng Shen | 2015-04-16 | 2015-08-06 | Hsia-VII |

| | | | | |
|---|---|---|---|---|
| U.S. Patent No. 9,288,867 | Chungho Hsia<br>Pai-Sheng Shen | 2015-04-16 | 2016-03-15 | Hsia-VIII |
| U.S. Patent No. 9,420,663 | Chungho Hsia<br>Alan Lin<br>Cheri Qin | 2015-08-04 | 2016-08-16 | Hsia-IX |
| U.S. Patent Appl. Publ. No. 2016/0345403 | Chungho Hsia | 2016-08-01 | 2016-11-24 | Hsia-X |
| U.S. Patent No. 9,743,484 | Chungho Hsia | 2016-08-01 | 2017-08-22 | Hsia-XI |
| U.S. Patent Appl. Publ. No. 2017/0079115 | Chungho Hsia | 2016-11-28 | 2017-03-16 | Hsia-XII |
| U.S. Patent Appl. Publ. No. 2017/0171937 | Chungho Hsia | 2017-02-28 | 2017-06-15 | Hsia-XIII |
| U.S. Patent No. 9,826,595 | Chungho Hsia | 2017-02-28 | 2017-11-21 | Hsia-XIV |
| U.S. Patent Appl. Publ. No. 2017/0311397 | Chungho Hsia | 2017-07-13 | 2017-10-26 | Hsia-XV |
| U.S. Patent No. 9,967,927 | Chungho Hsia | 2016-11-28 | 2018-05-08 | Hsia-XVI |
| U.S. Patent No. 9,986,619 | Chungho Hsia | 2017-07-13 | 2018-05-29 | Hsia-XVII |
| U.S. Patent Appl. Publ. No. 2018/0103524 | Chungho Hsia | 2017-12-08 | 2018-04-12 | Hsia-XVIII |
| U.S. Patent No. 10,021,753 | Chungho Hsia | 2017-12-08 | 2018-07-10 | Hsia-XIX |
| U.S. Patent Appl. Publ. No. 2018/0156394 | Chungho Hsia | 2018-01-18 | 2018-06-07 | Hsia-XX |
| U.S. Patent No. 10,036,515 | Chungho Hsia | 2018-01-18 | 2018-07-31 | Hsia-XXI |
| U.S. Patent Appl. Publ. No. 2018/0187877 | Chungho Hsia | 2018-02-14 | 2018-07-05 | Hsia-XXII |
| U.S. Patent Appl. Publ. No. 2018/0192488 | Chungho Hsia | 2018-03-03 | 2018-07-05 | Hsia-XXIII |
| U.S. Patent Appl. Publ. No. 2018/0228001 | Chungho Hsia | 2018-04-06 | 2018-08-09 | Hsia-XXIV |

**3. U.S. Patent 11,172,551**

| Patent / Publication No. | Inventor(s) | Filing Date | Published / Issue Date | Short Name |
|---|---|---|---|---|
| U.S. Patent No. 4,438,486 | Angelo Ferraro | 1982-02-22 | 1984-03-20 | Ferraro |
| U.S. Patent No. 4,888,821 | Charles Hamp, III<br>Paul Weindorf | 1988-12-09 | 1989-12-19 | Hamp |
| U.S. Patent No. 5,386,148 | David Fiori, Jr. | 1992-05-08 | 1995-01-31 | Fiori |
| U.S. Patent No. 8,193,738 | Chung-Jen Chu<br>Yi-Jing Chen<br>Hung-Chun Chung | 2009-08-07 | 2012-06-05 | Chu |
| U.S. Patent No. 8,278,832 | Chen-Ming Hung<br>Maung Maung Win, Lan-Ting Hsu, Chih-Yuan Hsieh | 2009-11-23 | 2012-10-02 | Hung |
| U.S. Patent No. 8,779,676 | Victor Simi | 2011-08-31 | 2014-07-15 | Simi |
| U.S. Patent No. 10,375,785 | Zhuoyan Li<br>Liqiang Zhu<br>Xueyou Ling<br>Jun Zhou, Lieyi Fang | 2017-12-20 | 2019-08-06 | Li |
| U.S. Patent No. 11,147,137 | Hemu Ye<br>Hongkui Jiang<br>Wei Liu | 2020-01-27 | 2021-10-12 | Ye |
| U.S. Patent Appl. Publ. 2007/0138971 | Liang Chen | 2007-02-15 | 2007-06-21 | Chen-III |
| U.S. Patent Appl. Publ 2007/0296277 | Kye Nam Lee<br>Young Jin Park<br>Jin Hyung Kim<br>Hyun Kyu Yang<br>Yoo Ran Kim | 2007-06-27 | 2007-12-27 | Lee-II |
| U.S. Patent Appl. Publ 2011/0309759 | Anatoly Shteynberg<br>Harry Rodriguez<br>Bradley Lehman<br>Dongsheng Zhou<br>Harlan Ohara | 2010-12-15 | 2011-12-22 | Shteynberg-II |
| U.S. Patent Appl. Publ 2011/0095846 | Gerard Wimpenny | 2010-12-17 | 2011-04-28 | Wimpenny |

| Patent / Publication No. | Inventor(s) | Filing Date | Published / Issue Date | Short Name |
|---|---|---|---|---|
| U.S. Patent Appl. Publ 2013/0000341 | Paolo De Piero<br>Maurizio Nardini<br>Charles John Bergh | 2012-04-02 | 2013-01-03 | Lai |
| U.S. Patent Appl. Publ 2013/0057167 | Christian Pura Angeles | 2011-07-29 | 2013-03-07 | Angeles-II |
| U.S. Patent Appl. Publ 2014/0300289 | Yan Zhu | 2014-03-13 | 2014-10-09 | Zhu |
| U.S. Patent Appl. Publ 2014/0347894 | Sehat Sutardja<br>Pantas Sutardja<br>Wanfeng Zhang | 2014-05-22 | 2014-11-27 | Sutardja |
| U.S. Patent Appl. Publ 2015/0057822 | Wayne Baldridge | 2014-08-14 | 2015-02-26 | Baldridge |
| U.S. Patent Appl. Publ 2017/0181233 | Leendert Van den Broeke | 2016-06-27 | 2017-06-22 | Broeke |
| U.S. Patent Appl. Publ 2018/0234019 | Zhi Quan Chen | 2017-03-12 | 2018-08-16 | Chen-IV |
| U.S. Patent Appl. Publ 2019/0394849 | Jie Dong Wang | 2019-09-05 | 2019-12-26 | Wang-II |
| CN 105722285 | Tiesheng Yan<br>Qingquan Guo<br>Xueshan Liu<br>Bingzhou Fang | 2014-12-04 | 2016-06-29 | Yan |
| U.S. Patent No. 9,119,254 | Yi-Wei Lee<br>Isaac Y. Chen<br>Tong-Cheng Jao<br>Chien-Yang Chen | 2014-12-11 | 2015-08-25 | Lee-I |
| U.S. Patent No. 9,137,860 | Hiroshi Fujita<br>Kazuhiko Itoh<br>Yoshiaki Hachiya<br>Kazuo Gouda | 2014-02-28 | 2015-09-15 | Fujita |
| U.S. Patent No. 9,166,485 | Siddharth Maru<br>Zhaohui He | 2014-03-11 | 2015-10-20 | Maru |
| U.S. Patent No. 9,369,050 | Wei Xiong<br>Travis L. Berry<br>Keith Davis | 2015-01-27 | 2016-06-14 | Xiong |
| U.S. Patent No. 9,521,715 | Sehat Sutardja<br>Pantas Sutardja<br>Wanfeng Zhang | 2014-05-22 | 2016-12-13 | Sutardja-II |
| U.S. Patent No. 9,788,371 | Yijun Zhao | 2015-12-03 | 2017-10-10 | Zhao |

| Patent / Publication No. | Inventor(s) | Filing Date | Published / Issue Date | Short Name |
|---|---|---|---|---|
| U.S. Patent No. 10,306,717 | Yeu-Torng Yau Tsung-Liang Hung | 2018-07-18 | 2019-05-28 | Yau |
| U.S. Patent Appl. Publ. 2008/0278092 | Ihor Lys, Igor Shikh | 2008-05-01 | 2008-11-13 | Lys |
| U.S. Patent Appl. Publ. 2010/0277067 | Fredric S. Maxik, David Henderson, Addy S. Widjaja | 2010-04-29 | 2010-11-04 | Maxik |
| WO 2011 45372 | Ian Wilson, James Frankland | 2010-10-14 | 2011-04-21 | Wilson |
| U.S. Patent Appl. Publ. No. 2013/0335959 | Chungho Hsia Pai-Sheng Shen | 2012-06-15 | 2013-12-19 | Hsia-I |
| U.S. Patent No. 8,749,167 | Chungho Hsia Pai-Sheng Shen | 2012-06-15 | 2014-06-10 | Hsia-II |
| U.S. Patent Appl. Publ. No. 2014/0104824 | Chungho Hsia Pai-Sheng Shen | 2013-12-19 | 2014-04-17 | Hsia-III |
| U.S. Patent No. 9,163,818 | Chungho Hsia Pai-Sheng Shen | 2013-12-19 | 2015-10-20 | Hsia-IV |
| U.S. Patent Appl. Publ. No. 2015/0181661 | Chungho Hsia Pai-Sheng Shen | 2014-08-21 | 2015-06-25 | Hsia-V |
| U.S. Patent No. 9,277,603 | Chungho Hsia Pai-Sheng Shen | 2014-08-21 | 2016-03-01 | Hsia-VI |
| U.S. Patent Appl. Publ. No. 2015/0223303 | Chungho Hsia Pai-Sheng Shen | 2015-04-16 | 2015-08-06 | Hsia-VII |
| U.S. Patent No. 9,288,867 | Chungho Hsia Pai-Sheng Shen | 2015-04-16 | 2016-03-15 | Hsia-VIII |
| U.S. Patent No. 9,420,663 | Chungho Hsia Alan Lin Cheri Qin | 2015-08-04 | 2016-08-16 | Hsia-IX |
| U.S. Patent Appl. Publ. No. 2016/0345403 | Chungho Hsia | 2016-08-01 | 2016-11-24 | Hsia-X |
| U.S. Patent No. 9,743,484 | Chungho Hsia | 2016-08-01 | 2017-08-22 | Hsia-XI |
| U.S. Patent Appl. Publ. No. 2017/0079115 | Chungho Hsia | 2016-11-28 | 2017-03-16 | Hsia-XII |

| | | | | |
|---|---|---|---|---|
| U.S. Patent Appl. Publ. No. 2017/0171937 | Chungho Hsia | 2017-02-28 | 2017-06-15 | Hsia-XIII |
| U.S. Patent No. 9,826,595 | Chungho Hsia | 2017-02-28 | 2017-11-21 | Hsia-XIV |
| U.S. Patent Appl. Publ. No. 2017/0311397 | Chungho Hsia | 2017-07-13 | 2017-10-26 | Hsia-XV |
| U.S. Patent No. 9,967,927 | Chungho Hsia | 2016-11-28 | 2018-05-08 | Hsia-XVI |
| U.S. Patent No. 9,986,619 | Chungho Hsia | 2017-07-13 | 2018-05-29 | Hsia-XVII |
| U.S. Patent Appl. Publ. No. 2018/0103524 | Chungho Hsia | 2017-12-08 | 2018-04-12 | Hsia-XVIII |
| U.S. Patent No. 10,021,753 | Chungho Hsia | 2017-12-08 | 2018-07-10 | Hsia-XIX |
| U.S. Patent Appl. Publ. No. 2018/0156394 | Chungho Hsia | 2018-01-18 | 2018-06-07 | Hsia-XX |
| U.S. Patent No. 10,036,515 | Chungho Hsia | 2018-01-18 | 2018-07-31 | Hsia-XXI |
| U.S. Patent Appl. Publ. No. 2018/0187877 | Chungho Hsia | 2018-02-14 | 2018-07-05 | Hsia-XXII |
| U.S. Patent Appl. Publ. No. 2018/0192488 | Chungho Hsia | 2018-03-03 | 2018-07-05 | Hsia-XXIII |
| U.S. Patent Appl. Publ. No. 2018/0228001 | Chungho Hsia | 2018-04-06 | 2018-08-09 | Hsia-XXIV |
| U.S. Patent No. 10,123,388 | Chungho Hsia | 2018-04-06 | 2018-11-06 | Hsia-XXV |
| U.S. Patent No. 10,136,483 | Chungho Hsia | 2018-03-03 | 2018-11-20 | Hsia-XXVI |
| U.S. Patent No. 10,161,616 | Chungho Hsia | 2018-02-14 | 2018-12-25 | Hsia-XXVII |
| U.S. Patent Appl. Publ. No. 2019/0045598 | Chungho Hsia | 2018-10-08 | 2019-02-07 | Hsia-XXVIII |
| U.S. Patent No. 10,225,905 | Chungho Hsia | 2018-10-08 | 2019-03-05 | Hsia-XXIX |
| U.S. Patent No. 10,237,946 | Chungho Hsia | 2018-12-03 | 2019-03-19 | Hsia-XXX |

| | | | | |
|---|---|---|---|---|
| U.S. Patent Appl. Publ. No. 2019/0104591 | Chungho Hsia | 2018-12-03 | 2019-04-04 | Hsia-XXXI |

**4. U.S. Patent 11,846,396**

| Patent / Publication No. | Inventor(s) | Filing Date | Published / Issue Date | Short Name |
|---|---|---|---|---|
| U.S. Patent Appl. Publ. No. 2012/0104858 | Michel Noe | 2010-05-26 | 2012-05-03 | Noe |
| U.S. Patent No. 9,998,004 | Thierry Sicard | 2017-07-10 | 2018-06-12 | Sicard |
| U.S. Patent No. 10,418,847 | Shiyu Liu<br>Alvaro Garcia<br>Zhihua Jian<br>Duoping Wang | 2016-05-03 | 2019-09-17 | Liu |
| U.S. Patent Appl. Publ. No. 2007/0138971 | Liang Chen | 2007-02-15 | 2007-06-21 | Chen-III |
| U.S. Patent Appl. Publ. No. 2007/0296277 | Kye Nam Lee<br>Young Jin Park<br>Jin Hung Kim<br>Hyun Kyu Yang<br>Yoo Ran Kim | 2007-06-27 | 2007-12-27 | Lee-II |
| U.S. Patent No. 2009/0237919 | Chun-Wei Wang | 2008-11-30 | 2009-09-24 | Wang-I |
| U.S. Patent Appl. Publ. No. 2010/0277067 | Fredric Maxik<br>David Henderson<br>Addy Widjaja | 2010-04-29 | 2010-11-04 | Maxik |
| U.S. Patent Appl. Publ. No. 2012/0181952 | Norbert Roeer | 2011-02-11 | 2012-07-19 | Roeer |
| U.S. Patent Appl. Publ. No. 2013/0003419 | Li-Chun Lai | 2011-06-29 | 2013-01-03 | Lai |
| U.S. Patent Appl. Publ. No. 2013/0181624 | Douglas Min Kang | 2012-01-13 | 2013-07-18 | Kang |
| U.S. Patent Appl. Publ. No. 2015/0155735 | Gorou Mori<br>Fumihito Inukai<br>Toshinobu Nagasawa | 2015-02-06 | 2015-06-04 | Mori |

| | | | | |
|---|---|---|---|---|
| U.S. Patent Appl. Publ. No. 2016/0141906 | Duck Young Jung | 2014-05-19 | 2016-05-19 | Jung |
| U.S. Patent Appl. Publ. No. 2017/0051886 | Shiyu Liu<br>Alvaro Garcia<br>Zhihua Jian<br>Duoping Wang | 2016-05-03 | 2017-02-23 | Liu-II |
| U.S. Patent Appl. Publ. No. 2017/0244239 | Kyong-Pil Jin<br>Myung-Sang Lee | 2017-01-27 | 2017-08-24 | Jin |
| U.S. Patent Appl. Publ. No. 2017/0279300 | Anthony Catalano<br>Steven Davis<br>Charles Teplin<br>Anthony McDougle | 2017-03-08 | 2017-09-28 | Catalano |
| U.S. Patent Appl. Publ. No. 2017/0310160 | Yehua Wan<br>Lifeng Ling<br>Songan Ye<br>Jinxiang Shen | 2016-07-11 | 2017-10-26 | Wan |
| U.S. Patent Appl. Publ. No. 2018/0058677 | En-Min Wu<br>Hsien-Chih Ho | 2017-08-23 | 2018-03-01 | Wu |
| U.S. Patent Appl. Publ. No. 2019/0006869 | Huan-Hsian Huang<br>Chen-Chi Lin | 2017-09-05 | 2019-01-03 | Huang |
| U.S. Patent Appl. Publ. No. 2014/0240966 | Alvaro Garcia<br>Brian Soderholm<br>Thomas Woods | 2012-07-19 | 2014-08-28 | Garcia |
| CN 105722285 | Tiesheng Yan<br>Gingguan Guo<br>Xueshan Liu<br>Bingzhou Fang | 2014-12-04 | 2016-06-29 | Yan |
| JP 2016042756 | Koji Komata<br>Tomohiro Shiraki<br>Ryusuke Yamaguchi<br>Hideaki Iwadate<br>Shinichi Nozuki<br>Yuya Yamazaki | 2014-08-18 | 2016-03-31 | Komata |

| | | | | |
|---|---|---|---|---|
| U.S. Patent No. 4,751,398 | Alexander Ertz, III | 1986-03-18 | 1988-06-14 | Ertz |
| U.S. Patent No. 4,888,821 | Charles Hamp, III<br>Paul Weindorf | 1988-12-09 | 1989-12-19 | Hamp |
| U.S. Patent No. 5,386,148 | David Fiori | 1992-05-08 | 1995-01-31 | Fiori |
| U.S. Patent No. 5,631,814 | Alexander Zak | 1995-06-16 | 1997-05-20 | Zak |
| U.S. Patent No. 6,502,044 | John Evan Lane<br>Richard Farthing | 1999-07-12 | 2002-12-31 | Lane |
| U.S. Patent No. 6,795,322 | Nobuyuki Aihara<br>Takeshi Onaka<br>Norikazu Tokunaga<br>Kenichi Onda<br>Satoru Masuyama<br>Shigekazu Zemba | 1999-12-22 | 2004-09-21 | Aihara |
| U.S. Patent No. 6,957,048 | Jose Antonio Viera Formenti | 2002-04-16 | 2005-10-18 | Formenti |
| U.S. Patent No. 7,084,582 | Nicolas Buonocunto | 2004-08-27 | 2006-08-01 | Buonocunto |
| U.S. Patent No. 7,550,873 | Ming Jiang<br>Min Shi | 2007-01-28 | 2009-06-23 | Jiang |
| U.S. Patent No. 7,902,769 | Anatoly Shteynberg<br>Harry Rodriguez | 2007-01-19 | 2011-03-08 | Shteynberg-I |
| U.S. Patent No. 7,977,913 | Eng Soon Dave Tan<br>Kwang Sheun Tham<br>Wah Swee Tan | 2005-11-18 | 2011-07-12 | Tan |
| U.S. Patent No. 8,278,832 | Chen-Ming Hung<br>Maung Maung Win<br>Lan-Ting Hsu<br>Chih-Yuan Hsieh | 2009-11-23 | 2012-10-02 | Hung |

| | | | | |
|---|---|---|---|---|
| U.S. Patent No. 8,779,676 | Victor Simi | 2011-08-31 | 2014-07-15 | Simi |
| U.S. Patent No. 9,078,308 | Nicolas Williams | 2012-03-28 | 2015-07-07 | Williams |
| U.S. Patent No. 9,119,254 | Yi-Wei Lee<br>Isaac Chen<br>Tong-Cheng Jao<br>Cien-Yang Chen | 2014-12-11 | 2015-08-25 | Lee-I |
| U.S. Patent No. 9,247,623 | Michael Recker<br>David Levine | 2011-09-28 | 2016-01-26 | Recker |
| U.S. Patent No. 9,369,050 | Wei Xiong<br>Travis Berry<br>Keith Davis | 2015-01-27 | 2016-06-14 | Xiong |
| U.S. Patent No. 9,401,615 | Satoshi Abe<br>Atsushi Sakurai | 2014-09-17 | 2016-07-26 | Abe |
| U.S. Patent No. 9,515,519 | Ig Soo Kwon | 2015-12-18 | 2016-12-06 | Kwon |
| U.S. Patent No. 9,648,676 | Christian Angeles<br>Jose Requinton Del Carmen, Jr. | 2014-09-26 | 2017-05-09 | Angeles-I |
| U.S. Patent No. 9,788,371 | Yijun Zhao | 2014-04-04 | 2017-10-10 | Zhao |
| U.S. Patent No. 9,954,390 | Xiaohong Chen<br>David Ci | 2013-05-30 | 2018-04-24 | Ci |
| U.S. Patent No. 10,027,166 | Yifeng Qiu | 2017-10-11 | 2018-07-17 | Qiu |
| U.S. Patent No. 10,038,326 | Penghui Chen | 2016-04-19 | 2018-07-31 | Chen-I |
| U.S. Patent No. 10,057,947 | Ian Wilson | 2017-04-12 | 2018-08-21 | Wilson-I |
| U.S. Patent No. 10,148,099 | Kimmo Kyllonen<br>John Seliski | 2016-06-23 | 2018-12-04 | Kyllonen |
| U.S. Patent No. 10,333,344 | John Luk | 2017-02-21 | 2019-06-25 | Luk |
| U.S. Patent No. 10,375,785 | Zhuoyan Li<br>Liqiang Zhu | 2017-12-20 | 2019-08-06 | Li |

| | | | | |
|---|---|---|---|---|
| | Xueyou Ling<br>Jun Zhou<br>Lieyi Fang | | | |
| U.S. Patent No. 10,483,793 | Ian Wilson<br>Cristiano De Menezes | 2016-02-23 | 2019-11-19 | Wilson-II |
| U.S. Patent No. 11,147,137 | Hemu Ye<br>Hongkui Jiang<br>Wei Liu | 2020-01-27 | 2021-10-12 | Ye |
| U.S. Patent Appl. Publ. No. 2016/0328928 | Chamy ChiaChen Lutz | 2016-05-03 | 2016-11-10 | Lutz |
| U.S. Patent No. 10,020,675 | Kanghong Zhang | 2017-06-23 | 2018-07-10 | Zhang |
| U.S. Patent Appl. Publ. No. 2014/0300289 | Yan Zhu | 2014-03-13 | 2014-10-09 | Zhu |
| U.S. Patent Appl. Publ. No. 2013/0147376 | John Trainor<br>James McBryde<br>Randall Powers<br>Joseph Chobot | 2012-05-08 | 2013-06-13 | Trainor |
| U.S. Patent Appl. Publ. No. 2013/0335959 | Chungho Hsia<br>Pai-Sheng Shen | 2012-06-15 | 2013-12-19 | Hsia-I |
| U.S. Patent No. 8,749,167 | Chungho Hsia<br>Pai-Sheng Shen | 2012-06-15 | 2014-06-10 | Hsia-II |
| U.S. Patent Appl. Publ. No. 2014/0104824 | Chungho Hsia<br>Pai-Sheng Shen | 2013-19-12 | 2014-04-17 | Hsia-III |
| U.S. Patent No. 9,163,818 | Chungho Hsia<br>Pai-Sheng Shen | 2013-19-12 | 2015-10-20 | Hsia-IV |
| U.S. Patent Appl. Publ. No. 2015/0181661 | Chungho Hsia<br>Pai-Sheng Shen | 2014-08-21 | 2015-06-25 | Hsia-V |
| U.S. Patent No. 9,277,603 | Chungho Hsia<br>Pai-Sheng Shen | 2014-08-21 | 2016-03-01 | Hsia-VI |
| U.S. Patent Appl. Publ. No. 2015/0223303 | Chungho Hsia<br>Pai-Sheng Shen | 2015-04-16 | 2015-08-06 | Hsia-VII |
| U.S. Patent No. 9,288,867 | Chungho Hsia<br>Pai-Sheng Shen | 2015-04-16 | 2016-03-15 | Hsia-VIII |

| | | | | |
|---|---|---|---|---|
| U.S. Patent No. 9,420,663 | Chungho Hsia<br>Alan Lin<br>Cheri Qin | 2015-08-04 | 2016-08-16 | Hsia-IX |
| U.S. Patent Appl. Publ. No. 2016/0345403 | Chungho Hsia | 2016-08-01 | 2016-11-24 | Hsia-X |
| U.S. Patent No. 9,743,484 | Chungho Hsia | 2016-08-01 | 2017-08-22 | Hsia-XI |
| U.S. Patent Appl. Publ. No. 2017/0079115 | Chungho Hsia | 2016-11-28 | 2017-03-16 | Hsia-XII |
| U.S. Patent Appl. Publ. No. 2017/0171937 | Chungho Hsia | 2017-02-28 | 2017-06-15 | Hsia-XIII |
| U.S. Patent No. 9,826,595 | Chungho Hsia | 2017-02-28 | 2017-11-21 | Hsia-XIV |
| U.S. Patent Appl. Publ. No. 2017/0311397 | Chungho Hsia | 2017-07-13 | 2017-10-26 | Hsia-XV |
| U.S. Patent No. 9,967,927 | Chungho Hsia | 2016-11-28 | 2018-05-08 | Hsia-XVI |
| U.S. Patent No. 9,986,619 | Chungho Hsia | 2017-07-13 | 2018-05-29 | Hsia-XVII |
| U.S. Patent Appl. Publ. No. 2018/0103524 | Chungho Hsia | 2017-12-08 | 2018-04-12 | Hsia-XVIII |
| U.S. Patent No. 10,021,753 | Chungho Hsia | 2017-12-08 | 2018-07-10 | Hsia-XIX |
| U.S. Patent Appl. Publ. No. 2018/0156394 | Chungho Hsia | 2018-01-18 | 2018-06-07 | Hsia-XX |
| U.S. Patent No. 10,036,515 | Chungho Hsia | 2018-01-18 | 2018-07-31 | Hsia-XXI |
| U.S. Patent Appl. Publ. No. 2018/0187877 | Chungho Hsia | 2018-02-14 | 2018-07-05 | Hsia-XXII |
| U.S. Patent Appl. Publ. No. 2018/0192488 | Chungho Hsia | 2018-03-03 | 2018-07-05 | Hsia-XXIII |
| U.S. Patent Appl. Publ. No. 2018/0228001 | Chungho Hsia | 2018-04-06 | 2018-08-09 | Hsia-XXIV |
| U.S. Patent No. 10,123,388 | Chungho Hsia | 2018-04-06 | 2018-11-06 | Hsia-XXV |
| U.S. Patent No. 10,136,483 | Chungho Hsia | 2018-03-03 | 2018-11-20 | Hsia-XXVI |

| | | | | |
|---|---|---|---|---|
| U.S. Patent No. 10,161,616 | Chungho Hsia | 2018-02-14 | 2018-12-25 | Hsia-XXVII |
| U.S. Patent Appl. Publ. No. 2019/0045598 | Chungho Hsia | 2018-10-08 | 2019-02-07 | Hsia-XXVIII |
| U.S. Patent No. 10,225,905 | Chungho Hsia | 2018-10-08 | 2019-03-05 | Hsia-XXIX |
| U.S. Patent No. 10,237,946 | Chungho Hsia | 2018-12-03 | 2019-03-19 | Hsia-XXX |
| U.S. Patent Appl. Publ. No. 2019/0104591 | Chungho Hsia | 2018-12-03 | 2019-04-04 | Hsia-XXXI |
| U.S. Patent Appl. Publ. No. 2019/0166671 | Chungho Hsia | 2019-01-14 | 2019-05-30 | Hsia-XXXII |
| U.S. Patent No. 10,314,123 | Chungho Hsia | 2019-02-06 | 2019-06-04 | Hsia-XXXIII |
| U.S. Patent No. 10,327,298 | Chungho Hsia | 2019-01-14 | 2019-06-18 | Hsia-XXXIV |
| U.S. Patent Appl. Publ. No. 2019/0191508 | Chungho Hsia | 2019-02-06 | 2019-06-20 | Hsia-XXXV |
| U.S. Patent Appl. Publ. No. 2019/0208592 | Chungho Hsia | 2019-03-08 | 2019-07-04 | Hsia-XXXVI |
| U.S. Patent No. 10,390,394 | Chungho Hsia | 2019-03-08 | 2019-08-20 | Hsia-XXXVII |
| U.S. Patent No. 10,390,395 | Chungho Hsia | 2019-05-02 | 2019-08-20 | Hsia-XXXVIII |
| U.S. Patent No. 10,390,396 | Chungho Hsia | 2019-06-05 | 2019-08-20 | Hsia-XXXIX |
| U.S. Patent Appl. Publ. No. 2019/0261474 | Chungho Hsia | 2019-05-02 | 2019-08-22 | Hsia-XL |
| U.S. Patent Appl. Publ. No. 2019/0327806 | Chungho Hsia | 2019-07-01 | 2019-10-24 | Hsia-XLI |
| U.S. Patent No. 10,485,065 | Chungho Hsia | 2019-07-01 | 2019-11-19 | Hsia-XLII |
| U.S. Patent No. 10,485,073 | Chungho Hsia | 2019-08-21 | 2019-11-19 | Hsia-XLIII |
| U.S. Patent Appl. Publ. No. 2019/0357334 | Chungho Hsia | 2019-08-02 | 2019-11-21 | Hsia-XLIV |

| | | | | |
|---|---|---|---|---|
| U.S. Patent No. 10,492,265 | Chungho Hsia | 2019-08-02 | 2019-11-26 | Hsia-XLV |
| U.S. Patent Appl. Publ. No. 2019/0380187 | Chungho Hsia | 2019-08-21 | 2019-12-12 | Hsia-XLVI |
| U.S. Patent Appl. Publ. No. 2020/0015334 | Chungho Hsia | 2019-09-16 | 2020-01-09 | Hsia-XLVII |
| U.S. Patent Appl. Publ. No. 2020/0060010 | Chungho Hsia | 2019-10-25 | 2020-02-20 | Hsia-XLVIII |
| U.S. Patent Appl. Publ. No. 2020/0084856 | Chungho Hsia | 2019-11-12 | 2020-03-12 | Hsia-XLIX |
| U.S. Patent No. 10,602,597 | Chungho Hsia | 2019-11-25 | 2020-03-24 | Hsia-L |
| U.S. Patent Appl. Publ. No. 2020/0100336 | Chungho Hsia | 2019-11-25 | 2020-03-26 | Hsia-LI |
| U.S. Patent No. 10,645,782 | Chungho Hsia | 2019-09-16 | 2020-05-05 | Hsia-LII |
| U.S. Patent Appl. Publ. No. 2020/0146124 | Chungho Hsia | 2020-01-06 | 2020-05-07 | Hsia-LIII |
| U.S. Patent No. 10,660,179 | Chungho Hsia | 2020-01-06 | 2020-05-19 | Hsia-LIV |
| U.S. Patent No. 10,660,184 | Chungho Hsia | 2019-10-25 | 2020-05-19 | Hsia-LV |
| U.S. Patent Appl. Publ. No. 2020/0229279 | Chungho Hsia | 2020-03-25 | 2020-07-16 | Hsia-LVI |
| U.S. Patent Appl. Publ. No. 2020/0259359 | Chungho Hsia | 2020-04-28 | 2020-08-13 | Hsia-LVII |
| U.S. Patent Appl. Publ. No. 2021/0159725 | Chungho Hsia | 2020-11-16 | 2021-05-27 | Hsia-LVIII |

### B. Table 2: Non-Patent Prior Art Publications

#### 1. U.S. Patent 10,295,905

| Author or Publisher | Reference Title | Publication Date |
|---|---|---|
| Yung-Chun Wu et al. | A Three-in-One Converter for Regular and Emergency Lighting Applications | 2009-01-21 |

| Author or Publisher | Reference Title | Publication Date |
|---|---|---|
| H. M. Matoso et al. | Intelligent Power LED Lighting System With Wireless Communication | 2012-12-20 |
| R. A. Pinto et al. | Compact Emergency Lamp Using Power LEDs | 2010-02-17 |
| Rafael A. Pinto et al. | A Bidirectional Buck-Boost Converter to Supply LEDs from Batteries during Peak Load Time | 2012-01-02 |

**2. U.S. Patent 10,237,946**

| Author or Publisher | Reference Title | Publication Date |
|---|---|---|
| Yung-Chun Wu et al. | A Three-in-One Converter for Regular and Emergency Lighting Applications | 2009-01-21 |
| H. M. Matoso et al. | Intelligent Power LED Lighting System With Wireless Communication | 2012-12-20 |
| R. A. Pinto et al. | Compact Emergency Lamp Using Power LEDs | 2010-02-17 |
| Rafael A. Pinto et al. | A Bidirectional Buck-Boost Converter to Supply LEDs from Batteries during Peak Load Time | 2012-01-02 |

**3. U.S. Patent 10,645,782**

| Author or Publisher | Reference Title | Publication Date |
|---|---|---|
| Yung-Chun Wu et al. | A Three-in-One Converter for Regular and Emergency Lighting Applications | 2009-01-21 |
| H. M. Matoso et al. | Intelligent Power LED Lighting System With Wireless Communication | 2012-12-20 |
| R. A. Pinto et al. | Compact Emergency Lamp Using Power LEDs | 2010-02-17 |

| Author or Publisher | Reference Title | Publication Date |
|---|---|---|
| Rafael A. Pinto et al. | A Bidirectional Buck-Boost Converter to Supply LEDs from Batteries during Peak Load Time | 2012-01-02 |

**4. U.S. Patent 11,172,551**

| Author or Publisher | Reference Title | Publication Date |
|---|---|---|
| STMicroelectronics | AN1059, Application Note, Design Equations of High-Power-Factor Flyback Converters Based on the L6561 | September 2003 |
| STMicroelectronics | AN1060, Application Note, Flyback Converters with the L6561 PFC Controller | January 2003 |
| STMicroelectronics | AN2711, Application Note, 120 VAC Input-Triac Dimmable LED Driver Based on the L6562A | September 2010 |
| Zhang, J., Jiang, T., Zeng, H. and Wu, X.<br><br>IET Power Electronics, 6(3), pp.572-580 | Primary side feedforward control for TRIAC dimmable light emitting diode driver with constant power | March 2013 |
| Lee, E.S., Sohn, Y.H., Nguyen, D.T., Cheon, J.P. and Rim, C.T.<br><br>Journal of Power Electronics, 15(2), pp.555-566 | LED driver with TRIAC dimming control by variable switched capacitance for power regulation | March 2015 |
| Sreeram, K., Unnikrishnan, L. and Unnikrishnan, P.C.<br><br>Int. J. Eng. Res. Technol, 6(04), pp.1131-1136 | A Single Switch Low Cost LED Driver with Wireless Dimming Controls | April 2017 |

### 5. U.S. Patent 11,846,396

| Author or Publisher | Reference Title | Publication Date |
|---|---|---|
| Yung-Chun Wu et al. | A Three-in-One Converter for Regular and Emergency Lighting Applications | 2009-01-21 |
| H. M. Matoso et al. | Intelligent Power LED Lighting System With Wireless Communication | 2012-12-20 |
| R. A. Pinto et al. | Compact Emergency Lamp Using Power LEDs | 2010-02-17 |
| Rafael A. Pinto et al. | A Bidirectional Buck-Boost Converter to Supply LEDs from Batteries during Peak Load Time | 2012-01-02 |

## C. Table 3: Prior Art Systems

### 1. U.S. Patent 11,172,551

| System Name or Description | Use/Knowledge/Offer Date | Manufacturer |
|---|---|---|
| T8-7.5-24G-835-HYB | at least as early as 2019-07-18 | Tospo |
| T8-7.5-24G-840-HYB | at least as early as 2019-08-15 | Tospo |
| T8-7.5-24G-850-HYB | at least as early as 2019-08-15 | Tospo |
| T8-12-48G-835-HYB | at least as early as 2019-07-22 | Tospo |
| T8-12-48G-840-HYB | at least as early as 2019-08-15 | Tospo |
| T8-12-48G-850-HYB | at least as early as 2019-10-02 | Tospo |

To the extent that the references identified above in Sections V.A.1-3 describe any product(s) or embodiment(s) or references that describe other products or embodiments, RAB further alleges that the product(s), embodiments, or references are also invalidating prior art and reserve the right to rely upon the product(s) described therein, embodiments or the references to further illustrate and support its invalidity contentions. RAB reserves the right to rely on foreign counterparts of U.S. patents and published applications identified in these Preliminary Invalidity Contentions; U.S. counterparts of foreign patents and published applications identified in these

Preliminary Invalidity Contentions; and U.S. and foreign patents and patent applications corresponding to articles and publications identified in these Invalidity Contentions.

In addition to the prior art identified above and in the accompanying exhibits, the "Background of the Invention" section of the Asserted Patents discloses relevant prior art, and RAB reserves the right to rely on such prior art.

RAB also reserves the right to rely on the prior-art references cited herein for any purpose including, for example, to demonstrate the state of the prior art and/or the knowledge of a person of ordinary skill in the art. Similarly, RAB reserves the right to rely on other prior-art references to demonstrate the state of the art at the time of the alleged invention of the subject matter of the Asserted Patents.

RAB's investigation into the prior art is ongoing, and it will supplement its contentions as more information becomes available to it. RAB anticipates issuing subpoenas to third parties believed to have knowledge, documentation and/or corroborating evidence concerning some of the prior art listed herein and/or additional prior art. These third parties include, but are not limited to, the authors, employers of authors, inventors, assignees, or former or current employees of assignees, of the references and systems identified in these Invalidity Contentions.

### D. Identification of Whether Prior Art Anticipates or Renders Obvious Asserted Claims

Pursuant to Paragraph 3-3(a)(2) of Miscellaneous Order No. 62, RAB states that the prior-art references identified above in Sections V.A-C anticipate and/or render obvious the Asserted Claims obvious under 35 U.S.C. §§ 102, 103. Exemplary proposed combinations of prior-art references that render one or more of the Asserted Claims obvious are identified below in Section VI.A.

Pursuant to Paragraph 3-3(a)(3) of Miscellaneous Order No. 62, the charts attached to these Invalidity Contentions as Exhibits A-1 *et seq.* to E-1 *et seq*. (collectively, "the Claim Charts"), set forth where in each item of prior art one or more elements of each asserted claim is found.

**1. U.S. Patent 10,295,905**

| Prior Art (Short Name) | Claim Chart |
|---|---|
| Zhang | A-1 |
| Zhu | A-2 |
| Trainor | A-3 |
| Singer | A-4 |
| Roeer | A-5 |
| Lipcsei | A-6 |

**2. U.S. Patent 10,237,946**

| Prior Art (Short Name) | Claim Chart |
|---|---|
| Zhang | B-1 |
| Zhu | B-2 |
| Trainor | B-3 |
| Lipcsei | B-4 |
| Sicard | B-5 |
| Ertz | B-6 |

**3. U.S. Patent 10,645,782**

| Prior Art (Short Name) | Claim Chart |
|---|---|
| Jagjitpati | C-1 |
| Zhu | C-2 |
| Trainor | C-3 |

| Prior Art (Short Name) | Claim Chart |
|---|---|
| Lipcsei | C-4 |

**4. U.S. Patent 11,172,551**

| Prior Art (Short Name) | Claim Chart |
|---|---|
| T8-12-48G-840-HYB | D-1 |
| Yan | D-2 |
| Zhu | D-3 |
| Simi | D-4 |
| van den Broeke | D-5 |

**5. U.S. Patent 11,846,396**

| Prior Art (Short Name) | Claim Chart |
|---|---|
| Zhang | E-1 |
| Zhu | E-2 |
| Trainor | E-3 |
| Lane | E-4 |

RAB reserves the right to rely on other references disclosed or incorporated by reference in these Preliminary Invalidity Contentions, in prior-art references identified or charted in these contentions, in the Asserted Patents, any patents or applications related to the Asserted Patents, in the file history of the Asserted Patents, or any related patents or applications. RAB's claim charts may disclose multiple theories of invalidity in a single chart.

In the charts, RAB cites various relevant portions of the identified prior art references, but other portions may contain additional or different support for a particular claim limitation, and thus may additionally anticipate, either expressly or inherently, and/or render obvious, one or more

of the Asserted Claims. A POSITA at the time of the filing of the Asserted Patents knew to read references as a whole, and in the context of other publications and literature and the general knowledge in the field.

Where RAB cites to a particular figure in a prior art reference, the citation should be understood to encompass the caption and description of the figure as well as any text relating to the figure in addition to the figure itself. Conversely, where a cited portion of text refers to a figure, the citation should be understood to include the figure as well.

Furthermore, while RAB has generally identified at least one citation per limitation present in a reference or combination, every disclosure of the same or similar limitation in the same reference or combination is not necessarily identified. To focus the issues, RAB cites particularly pertinent portions of identified references, even where a reference or combination may contain additional support for a particular claim element. RAB thus may rely on uncited portions of the prior art references for additional support or context for a particular element.

RAB may also rely upon other prior art identified in future supplements, corroborating references, documentation, source code, products, and testimony, including materials obtained through further investigation and third-party discovery of the prior art identified herein, that demonstrates the invalidating functionality identified in these Preliminary Invalidity Contentions or that show the state of the art in the relevant time period (irrespective of whether such references themselves qualify as prior art to the Asserted Patents), and expert testimony to provide context to or aid in understanding the cited portions of the identified prior art. Similarly, where there are multiple references relating to a single prior-art product or system, RAB may cite only to a single reference for a particular limitation, even though other references may also contain similar teachings. Thus, RAB may rely on uncited references relating to a particular prior art document

or system for additional support for a particular element. Any prior art disclosed as anticipating a limitation also renders that limitation obvious.

Additionally, a POSITA at the time of the alleged inventions generally read a prior art reference as a whole and in the context of other publications and literature. Numerous prior art references, including those identified herein and in the attached exhibits, reflect common knowledge and the state, scope, and content of the prior art before the priority date of the Asserted Claims. RAB may rely on uncited portions of the prior art references and on other publications and expert testimony to provide context and as aids to understanding and interpreting the portions that are cited.

Statements made by applicants of the Asserted Patents ("Applicants") in the specification and/or during prosecution of the Asserted Patents and any related patents/applications, such as in the "Background of the Invention" section that describes the related art known to Applicants, are admissions that can be relied upon for both anticipation and obviousness determinations, regardless of whether the admitted prior art would otherwise qualify as prior art under the statutory categories set forth in 35 U.S.C. § 102. *See* MPEP §§ 2129 and 608.01(c). To the extent Plaintiff contends that the Asserted Claims are not invalid as anticipated by and/or obvious in view of the prior art under 35 U.S.C. §§ 102 and 103, RAB reserves the right to rely on the inventor's admitted prior art to demonstrate the invalidity of the Asserted Claims.

As discovery and investigation continues, RAB reserves the right to identify, disclose and/or make available for inspection, additional facts, documents and things concerning prior art products and systems, including the identity of the product/system's purchasers or recipients, additional details regarding features and functionalities of products/systems, physical samples

representative of any products/systems, and software and/or source code for any such products/systems.

## VI. IDENTIFICATION OF MOTIVATION TO COMBINE REFERENCES

### A. Exemplary Combinations of References

If not anticipated or otherwise not invalid, the Asserted Claims would have been obvious. As discussed herein and in the Claim Charts, a POSITA would have been motivated to modify or combine the references in the Claim Charts based on the disclosures identified and/or information that would have been generally known to a POSITA with reasonable expectations of success. Exemplary combinations of references are provided below:

#### 1. U.S. Patent 10,295,905

| Prior Art (Short Name) | In Combination With | Claims |
|---|---|---|
| Zhang | Zhu, and Trainor | 1-2, 9-11, and 15-18 |
| Zhang | Zhu, Trainor, and Singer | 7 |
| Zhang | Zhu, Trainor, and Roeer | 12 |
| Zhang | Zhu, Trainor, and Lipcsei | 14 |

#### 2. U.S. Patent 10,237,946

| Prior Art (Short Name) | In Combination With | Claims |
|---|---|---|
| Zhang | Zhu, Trainor, and Sicard | 1, 9-13, 15, and 17-20 |
| Zhang | Zhu, Trainor, Sicard, and Lipcsei | 2-5 and 16 |
| Zhang | Zhu, Trainor, Sicard, and Ertz | 11-12 |

**3. U.S. Patent 10,645,782**

| Prior Art (Short Name) | In Combination With | Claims |
|---|---|---|
| Jagjitpati | Zhu and Trainor | 1-2 and 20-22 |
| Jagjitpati | Zhu, Trainor, and Lipcsei | 2, 4-6, 8-10, 24-26, 28-30, and 40 |

**4. U.S. Patent 11,172,551**

| Prior Art (Short Name) | In Combination With | Claims |
|---|---|---|
| Yan | Zhu | 1-2, 9-14, 17-19, 21 |
| Yan | Zhu and Simi | 15-16, 20 |
| Yan | Zhu and T8-12-48G-840-HYB | 15 |
| Yan | Zhu and T8-12-48G-840-HYB and Simi | 16 |
| Zhu | Yan | 1-2, 9-14, 17-19, 21 |
| Zhu | Yan and Simi | 15-16, 20 |
| Zhu | Yan and T8-12-48G-840-HYB | 15 |
| Zhu | Yan and T8-12-48G-840-HYB and Simi | 16 |
| Broeke | Yan and Zhu and/or Simi | 1-2, 9-14, 17-19, 21 |
| Broeke | Yan and Zhu and Simi | 15-16, 20 |
| Broeke | Yan and Zhu and T8-12-48G-840-HYB | 15 |
| Broeke | Yan and Zhu and T8-12-48G-840-HYB and Simi | 16 |
| Simi | Yan | 13-21 |
| Simi | Yan and/or Zhu and/or Broeke | 1-2, 9-12 |
| T8-12-48G-840-HYB | Yan and/or Zhu and/or Broeke and/or Simi | 1-2, 9-14, 17-19, 21 |
| T8-12-48G-840-HYB | Yan and/or Zhu and/or Broeke and Simi | 15-16, 20 |

### 5. U.S. Patent 11,846,396

| Prior Art (Short Name) | In Combination With | Claims |
|---|---|---|
| Zhang | Zhu and Trainor | 1-5, 15-17 and 19 |
| Zhang | Zhu, Trainor, and Lane | 19 |

## B. Motivation to Combine

In *KSR*, the Supreme Court emphasized that an idea that is the result of ordinary innovation, ordinary skill, or common sense should not be patentable. *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007). The Supreme Court held that a person of ordinary skill in the art is "a person of ordinary creativity, not an automaton" and "in many cases a person of ordinary skill in the art will be able to fit the teachings of multiple patents together like pieces of a puzzle." *Id*. at 420-21. Although a patent challenger is not required to show that one of ordinary skill in the art would have had a specific motivation to combine prior art references, such a showing may be helpful to the obviousness analysis. *Id*. at 418; *see also id*. at 402.

A POSITA would have been motivated to combine the references identified herein because, for example, the identified combinations fall into one or more of the following categories:

- A combination of elements known in the prior art according to known methods to yield a predictable result;
- A combination that is a simple substitution of one or more known elements for another to obtain a predictable result;
- A combination that involves using a known technique to improve a similar device or method in the same way;
- A combination that involves applying a known technique to a known device or method ready for improvement to yield a predictable result;
- A combination that results from a finite number of identified, predictable solutions with a reasonable expectation of success, such that the solution was one which was "obvious to try";

- A combination that results from known work in one field of endeavor prompting variations of it for use either in the same field or a different field based on design incentives or other market forces in which the variations were predictable to one of ordinary skill in the art; and

- A teaching, suggestion, or motivation in the prior art that would have led one of ordinary skill in the art to modify the prior art reference or to combine the teachings of various prior art references to arrive at the claimed invention.

Further, the Federal Circuit has held that a motivation to combine references may be implicit for patents claiming an "improvement":

> [A]n implicit motivation to combine exists not only when a suggestion may be gleaned from the prior art as a whole, but when the "improvement" is technology-independent and the combination of references results in a product or process that is more desirable, for example because it is stronger, cheaper, cleaner, faster, lighter, smaller, more durable, or more efficient. Because the desire to enhance commercial opportunities by improving a product or process is universal—and even common-sensical—we have held that there exists in these situations a motivation to combine prior art references even absent any hint of suggestion in the references themselves. In such situations, the proper question is whether the ordinary artisan possesses knowledge and skills rendering him capable of combining the prior art references.

*DyStar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick Co.*, 464 F.3d 1356, 1368 (Fed. Cir. 2006). The prior art references identified herein explicitly or implicitly refer to other prior art references, share common authors or inventors, were published in the same journals, presented at the same conferences, were presented as proposals to standards working groups, and/or were developed at common companies, schools, or organizations, all of which would motivate one of skill in the art to combine them. These references are also within the field of the Asserted Patents and are directed to similar subject matter within that field. Additionally, any products, devices, or processes described in the references existed and/or were invented before or during the period in which the claimed inventions were developed, providing further motivation to combine them.

To the extent Plaintiff challenges a combination of prior art with respect to a particular element, RAB reserves all rights to supplement these contentions to further specify the motivation

to combine the prior art. RAB may rely on cited or uncited portions of the prior art, other documents, and/or expert testimony to establish that a person of ordinary skill in the art would have been motivated to modify or combine the prior art so as to render the claims invalid as obvious.

A POSITA would have been motivated to combine the references identified in the Claim Charts because the identified combinations involve analogous references that are each directed to LED lighting. Further, a POSITA would have been motivated to combine these references and would have had a reasonable expectation of success in combining the references because the claim limitations in the Asserted Claims recite no more than well-known, conventional components and configurations routinely implemented for LED lights. Indeed, the references identified in the Claim Charts demonstrate that each limitation recited in the Asserted Claims was known in the art. To the extent a particular reference does not expressly disclose one of these or the other conventional limitations recited in the Asserted Claims, it would have been obvious to a POSITA to implement such features.

As set forth in the Claim Charts, the other limitations of the Asserted Claims similarly recite no more than well-known, conventional components and configurations routinely implemented for LED lighting and a POSITA would have been motivated to combine the references for the reasons set forth in the Claim Charts as well as general considerations including (1) well-known prior-art LED lights, (2) ways to optimize LED lighting circuitry for LED lights, and (3) market demands, such as improved LED light capabilities.

For example, with respect to the ’551 Patent, a POSITA would have been motivated to implement well known LED driver and flyback converter configurations (taught by Zhu and Simi, for example) to maximize dimmer holding currents, maintain controller operation at low dimmer

settings, and explain the operation of conventional components where others (such as Yan) simply leave those conventional details to the POSITA.

With respect to the ’905 Patent, a POSITA would have been motivated to implement well-known EMI input-filter and flyback-transformer configurations (taught by Zhu) and well-known battery-test, step-down converter, and switching-contact configurations for emergency LED drivers (taught by Trainor) to suppress EMI noise, achieve electrical isolation between primary and secondary circuits, verify battery condition through a simulated on-battery test, and regulate charging and output currents/voltages, explaining conventional circuit details that Zhang leaves to the POSITA to fill in.

As for the ’946 Patent, a POSITA would have been motivated to implement well-known EMI input-filter and flyback-converter configurations (taught by Zhu), battery-test, voltage-boost, and step-down converter configurations for emergency LED drivers (taught by Trainor), pull-down switching configurations for dimming-voltage control (taught by Lipcsei), and precision voltage-reference detection circuitry with status indicators (taught by Ertz) to suppress EMI noise, verify battery condition, regulate charging and output voltages, and monitor and signal battery/operating status, explaining conventional circuit details that Zhang leaves to the POSITA to fill in.

With respect to the ’782 Patent, a POSITA would have been motivated to implement well-known EMI input-filter configurations (taught by Zhu) and well-known electronic-switch and bias-resistor configurations for detecting DC-voltage conditions and controlling charge/discharge switches, including MOSFET and BJT implementations (taught by Lipcsei), to suppress EMI noise and to detect operating conditions and drive conventional switching transistors, and would have been motivated to implement Jagjitpati's standard LED driver power supply unit with a main

transformer and grounded output stage (also taught by Zhu) to provide galvanic isolation from the AC mains and a stable ground reference for noise suppression and voltage sensing, explaining conventional circuit details that Jagjitpati leaves to the POSITA to fill in.

Finally, with respect to the ’396 Patent, a POSITA would have been motivated to implement a well-known fly-back converter configuration for the main driver (taught by Zhu), a two-transistor bidirectional switching arrangement together with a battery-test status indicator and manual test switch (taught by Trainor), and a voltage regulator that facilitates switching between mains-derived and battery-derived power (taught by Lane), to improve conversion efficiency, independently control battery charging and discharging, report and initiate battery testing, and maintain a stable operating voltage for the control circuit regardless of power source, explaining conventional circuit details that Zhang leaves to the POSITA to fill in.

Additional rationales and motivations to combine particular references are provided in the claim chart. RAB reserves the right to provide further evidence of motivation to combine the prior art including through expert testimony.

### C. Secondary Considerations of Non-Obviousness

There is no evidence of any indicia of nonobviousness, including any long-felt but unsolved need; copying; failure of others; commercial success due to the patented invention; no industry praise; no unexpected results; no industry skepticism and no licensing. Each indicium of non-obviousness is addressed in turn below:

**No long felt but unsolved need.** There was no long felt but unsolved need that the Asserted Claims solved. The concepts described in the Asserted Patents were all well known before the alleged invention date of the Asserted Patents as evidenced by the patents themselves, their file history and references cited therein, and the prior art identified herein, including those identified in the above-referenced Exhibits. In addition, there was no long felt but unsolved need

because there is nothing particularly compelling about the claimed methods, systems, and apparatus.

**No copying.** Plaintiff has provided no credible evidence that the alleged invention of the Asserted Patents was copied, or more specifically, that any functionality that practices the Asserted Patent was copied. Copying "requires evidence of efforts to replicate a specific product." *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1246 (Fed. Cir. 2010). Here, Plaintiff has not shown, and cannot show, that RAB copied any product that embodies the Asserted Patents. Further, evidence of copying is "not sufficient to demonstrate nonobviousness of the claimed invention" where, as here, there is a "substantial question of validity raised by the prior art references" cited by RAB. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1366 (Fed. Cir. 2001). As explained in detail in these contentions, the Asserted Patents are rendered obvious by the prior art. Thus, Plaintiff cannot show any nexus between any alleged copying and the merits of the claimed invention of the Asserted Patents.

**No failure of others.** Although "[n]onobviousness is suggested by the failure of others to find a solution to the problem which the patents in question purport to solve," *Symbol Techs., Inc. v. Opticon, Inc.*, 935 F.2d 1569, 1578 (Fed. Cir. 1991) (cleaned up), this is not such a case. As explained in detail in these contentions, the circuitry recited in the Asserted Claims as well as the recited configuration of such circuits was well-known to a POSITA. Given this knowledge, a POSITA would have found combining the various prior-art teachings identified in these contentions to be straightforward, predictable, and a matter of routine optimization. The routine nature of the combination highlights that there was no failure of others in solving the purported problems identified in the Asserted Patents.

**No commercial success.** Plaintiff has not provided any evidence that any alleged success of its products or any other products is due to the alleged invention claimed in the Asserted Patent. A patentee bears the burden of demonstrating that the relevant commercial success is attributable to the claimed invention "as opposed to other economic and commercial factors unrelated to the technical quality of the patented subject matter." *Cable Elec. Prods, Inc. v. Genmark, Inc.*, 770 F.2d 1015, 1027 (Fed. Cir. 1985). Here, Plaintiff has not shown and cannot show that RAB's success is due to the alleged invention of the Asserted Patents. The commercial success of the accused products is unrelated to the purported invention of the Asserted Patents. Further, if any commercial success is due to any of the concepts disclosed in the Asserted Patents, those concepts are also present in the prior art and thus are irrelevant to the question of obviousness. *See Tokai Corp. v. Easton Enterprises, Inc.*, 632 F.3d 1358, 1369-70 (Fed. Cir. 2011) ("If commercial success is due to an element in the prior art, no nexus exists."); *In re Huai-Hung Kao*, 639 F.3d 1057, 1068 (Fed. Cir. 2011) ("Where the offered secondary consideration actually results from something other than what is both claimed and novel in the claim, there is no nexus to the merits of the claimed invention."); *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1312 (Fed. Cir. 2006) ("[I]f the feature that creates the commercial success was known in the prior art, the success is not pertinent.").

**No industry praise.** Plaintiff has presented no evidence of industry praise for the alleged invention of the Asserted Patent or any functionality that allegedly practices the Asserted Patents. To the extent any praise is related to any functionality that allegedly practices the Asserted Patents, that praise is not due to the allegedly novel features of the Asserted Patents, but instead only to features present in the prior art, which is not a sufficient nexus to be relevant to the question of

industry praise for purposes of obviousness. *See Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1328 (Fed. Cir. 2008).

**No unexpected results.** There is no evidence of any unexpected results when the elements of the Asserted Claims were combined. Instead, as discussed above, the concepts claimed in the Asserted Patents were already combined or would have been obvious to combine in the same manner as the Asserted Claims. These prior art systems and products, as described in these contentions, disclosed the same combinations of elements, and the same results of such combinations, that are recited in the Asserted Claims of the Asserted Patents. Thus, there were no unexpected results that arose from combining the well-known elements in the Asserted Claims of the Asserted Patent.

**No industry skepticism.** Plaintiff has presented no evidence that others were skeptical before the alleged invention date of the Asserted Patents, nor can it. In fact, there was no industry skepticism concerning the claimed concepts that pre-date the Asserted Patents. Instead, many companies and individuals were already using the concepts claimed in the Asserted Patent as demonstrated by the attached Exhibits. Thus, there was no industry skepticism that using or combining these well-known prior art concepts would be viable; others in the field were already combining them in the same manner as arranged in the Asserted Claims.

**Simultaneous Invention.** Individuals working independently of the Asserted Patent's named inventors simultaneously or near-simultaneously invented the alleged invention of the Asserted Claims of the Asserted Patent. Such evidence supports a finding that the Asserted Claims would have been obvious to a person of ordinary skill in the art at the time of the invention. *See Geo. M. Martin Co. v. Alliance Mach. Sys.*, 618 F.3d 1294, 1305 (Fed. Cir. 2010) ("Independently made, simultaneous inventions, made within a comparatively short space of time, are persuasive

evidence that the claimed apparatus was the product only of ordinary mechanical or engineering skill.") (citing *Concrete Appliances Co. v. Gomery*, 269 U.S. 177, 184 (1925)) (internal quotations omitted); *see also Ecolochem, Inc. v. So. Cal. Edison Co.*, 227 F.3d 1361, 1379 (Fed. Cir. 2000).

## VII. INVALIDITY UNDER 35 U.S.C. § 112

Pursuant to Paragraph 3-3(a)(4) of Miscellaneous Order No. 62, and subject to RAB's reservation of rights, RAB provides the following contentions relating to the invalidity of the Asserted Claims under 35 U.S.C. § 112 ("§112"). As set forth further below, the Asserted Claims are invalid for lack of written description and/or enablement under §112, ¶1 and/or are invalid for failing to comply with the definiteness requirements of §112, ¶2. RAB's contentions that the claims are invalid under §112 are made in the alternative, and do not constitute, and should not be interpreted as, admissions regarding the construction or scope of the Asserted Claims, or that any of the Asserted Claims are not anticipated or rendered obvious by any prior art.

The disclosures below do not attempt to identify all recitations of a given term or phrase in each claim. Where RAB has identified an instance of a term, phrase, or limitation in a particular claim that renders the claim invalid under §112, RAB contends that every instance of the challenged term, phrase, or limitation (or substantively similar term, phrase or limitation) in the claim renders the claim invalid for the same reasons. Where a particular claim term, phrase, or limitation is identified, RAB contends that the identified term, phrase, or limitation, as well as the surrounding claim language in context as recited in the applicable claim, suffer from the identified §112 defect. Although complete phrases are sometimes identified below, RAB reserves the right to argue any word or sub-phrase within a larger phrase also violates the written description, enablement, and/or definiteness requirements of §112. Furthermore, where a particular claim term, phrase, or limitation is identified with respect to one or more particular claims, RAB contends that each other Asserted Claim that recites the same (or similar) claim term, phrase, or limitation,

is subject to the same §112 defect. RAB contends that each dependent claim that depends from an independent claim that is invalid, as identified below, is also invalid for the same reasons.

In some instances, grounds upon which the Asserted Claims are invalid for failure to meet the requirements of §112 may be based upon the apparent constructions being employed by Plaintiff. These contentions shall not be construed as an admission that any claim construction advanced by RAB in this case is in any way inconsistent, flawed, or erroneous. Nor should these contentions prevent RAB from advancing claim construction and/or non-infringement positions in lieu of, or in addition to, these invalidity positions. Further these contentions shall not be construed as an acquiescence to Plaintiff's purported construction of the claim language. RAB's invalidity contentions under §112 may depend, in part, on the Court's claim construction, as well as Plaintiff's alleged scope of the Asserted Claims. Consequently, RAB identifies only the issues under §112 of which it is presently aware.

RAB's investigation of the Asserted Patents is ongoing, and RAB reserves the right to amend or supplement these disclosures based on further investigation and in a manner consistent with the Federal Rules of Civil Procedure, Miscellaneous Order No. 62, and the Scheduling Order, or otherwise in accordance with any order or direction of this Court or agreement of the parties. These contentions are being proffered without expert disclosure or discovery.

Further, Plaintiff's Infringement Contentions fail to provide sufficient detail to fully understand its proposed application of the Asserted Claims, and RAB reserves the right to assert additional grounds for invalidity under §112 in response to Plaintiff's claim interpretations. Moreover, a more detailed basis for RAB's indefiniteness, enablement, and/or written description defenses will be set forth in RAB's claim construction briefing and/or expert reports on invalidity

and/or in Motion[s] for Summary Judgment of Invalidity, to be served in accordance with the Court's Scheduling Order.

Subject to RAB's reservation of rights, RAB identifies the following indefiniteness, written description, and enablement grounds with respect to the following Asserted Claims. The following does not purport to list every claim limitation to the foregoing disclosed grounds.

### A. Legal Principles

#### 1. Indefiniteness

The claims of a patent must "particularly point[] out and distinctly claim[] the subject matter which the inventor or a joint inventor regards as the invention." § 112, ¶ 2. Claims are indefinite if they, "read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). "[I]t cannot be sufficient that a court can ascribe some meaning to a patent's claim; the definiteness inquiry trains on the understanding of a skilled artisan at the time of the patent application, not that of a court viewing matters post hoc." *Id*. at 2130.

In evaluating indefiniteness, courts "look to the patent record—the claims, specification, and prosecution history—to ascertain if they convey to one of skill in the art with reasonable certainty the scope of the invention claimed." *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1341 (Fed. Cir. 2015). Although "some modicum of uncertainty" is allowed to ensure "the appropriate incentives for innovation," the claims nonetheless must be "precise enough to afford clear notice of what is claimed, thereby appris[ing] the public of what is still open to them." *Nautilus*, 572 U.S. at 899 (alteration in original) (citations and internal quotation marks omitted).

Ultimately, the indefiniteness inquiry is not whether "a court can ascribe some meaning to a patent's claims," but rather whether the claims provide "objective boundaries." *Interval*

*Licensing LLC v. AOL Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014) (quotation omitted) (discussing *Nautilus*). Claim scope cannot depend solely on the unrestrained, subjective opinion of a particular individual purported to be practicing the invention. *Datamize LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1350 (Fed. Cir. 2005).

A claim term can be indefinite based on multiple grounds ranging from substantive concerns to unresolvable drafting errors, each of which can be fatal to the validity of the claims as a matter of law. A claim may be indefinite if its language "'might mean several different things' and the patent itself identifies 'no informed and confident choice . . . among the contending definitions.'" *Otsuka Pharm. Co., Ltd. v. Torrent Pharm. Ltd.*, 151 F. Supp. 3d 525, 545 (D.N.J. 2015) (quoting *Nautilus*, 135 S. Ct. at 2130 n.8).

Under *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005), a single claim that recites both an apparatus and the method steps of using that apparatus is indefinite under 35 U.S.C. § 112. The Federal Circuit there held indefinite a system claim reciting that "the user uses the input means to either change the predicted transaction information or accept the displayed transaction type and transaction parameters," because it was "unclear whether infringement of claim 25 occurs when one creates a system that allows the user to change the predicted transaction information or accept the displayed transaction, or whether infringement occurs when the user actually uses the input means." *Id.* A hybrid claim of this kind leaves the public unable to determine what act gives rise to liability, and the claim thus fails to inform those skilled in the art about the scope of the invention with reasonable certainty.

Likewise, terms of degree can be indefinite. For example, a claim that recites a term of degree may be indefinite where the specification fails to disclose any standard for measuring the degree, or where the specification supplies only a preferred embodiment in place of a boundary,

thereby leaving the skilled artisan to guess at the claim's outer limit. A term of degree survives only where the specification furnishes requirements, examples, and a point of comparison that together gives the term some objective measure.

Finally, claims that depend from claims that are indefinite inherit the indefiniteness of the claims from which they depend and are therefore also indefinite.

### 2. Written Description

A patent specification must contain "a written description of the invention." § 112, ¶ 2. The written description must "reasonably convey[] to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1350 (Fed. Cir. 2010) (en banc) (citation omitted). If the claimed invention does not appear in the specification, the claim fails regardless whether a POSITA could make or use the claimed invention. *See id.* at 1348. Establishing possession as of the filing date is crucial as "[t]he purpose of the written description requirement is to prevent an applicant from later asserting that he invented that which he did not; the applicant for a patent is therefore required to 'recount his invention in such detail that his future claims can be determined to be encompassed within his original creation.'" *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1330 (Fed. Cir. 2003). For example, a written description is inadequate where the claim in question exceeds the scope of what the patent discloses by omitting an attribute of the described invention from the limitations, thereby over-extending the reach of the claim. *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1377–78 (Fed. Cir. 2009). It is also insufficient that one of ordinary skill in the art might recognize that the disclosure could be modified in light of the prior art to arrive at the claimed subject matter. *Id.* at 1378–79 (citing *Eli Lilly*, 119 F.3d at 1566–67 (explaining that "an applicant complies with the written description requirement by describing the

invention, with all its claimed limitations, not that which makes it obvious.") (internal quotation marks omitted, emphasis added)).

Claims that depend from claims that are invalid for lack of written description support inherit the deficiencies of the claims from which they depend and are also invalid.

**3. Enablement**

The enablement requirement of § 112 is separate from and in addition to the written description requirement. *Ariad*, 598 F.3d at 1344. To meet the enablement requirement, the specification must enable a POSITA to "make and use the invention" across the full scope of the claim, "without undue experimentation." *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988); *see Wyeth & Cord/s Corp. v. Abbott Labs*., 720 F.3d 1380, 1384 (Fed. Cir. 2013); *see also LizardTech, Inc. v. Earth Res. Mapping, Inc*., 424 F.3d 1336, 1344–45 (Fed. Cir. 2005) ("[a patentee must] describe the manner and process of making and using the invention so as to enable a person of skill in the art to make and use the full scope of the invention without undue experimentation."). When "the teachings set forth in the specifications provide no more than a 'plan' or 'invitation' for those of skill in the art to experiment," the claims are not enabled. *Enzo Biochem, Inc. v. Calgene, Inc.*, 188 F.3d 1362, 1374 (Fed. Cir. 1999). To determine whether "undue" experimentation is required, a court considers: "(1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims." *Wands*, 858 F.2d at 737.

Claims that depend from claims that are invalid for lack of enablement inherit the deficiencies of the claims from which they depend and are also invalid.

### B. Indefiniteness Contentions

RAB contends that numerous claims of the Asserted Patents are invalid for indefiniteness under § 112, ¶2 because they fail to inform, with reasonable certainty, those skilled in the art about the scope of the claimed invention. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898 (2014); *see also IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005). RAB provides below an identification of terms or phrases that render such claims invalid, pursuant to § 112, ¶2 as indefinite.

#### 1. U.S. Patent 10,225,905

- "full power" (claim 1)
- "meet LED luminaire efficacy requirements" (claim 1)
- "predetermined low-level signal" (claim 1)
- "predetermined high-level signal" (claim 1)
- "when a rechargeable battery test is performed, both the first full-wave rectifier and the second full-wave rectifier are inactivated to disable both the charging circuit and the second driver" (claim 1)

#### 2. U.S. Patent 10,237,946

- "full power" (claim 1)
- "meet LED luminaire efficacy requirements" (claim 1)
- "when a rechargeable battery test is performed, the first driver is enabled to operate the one or more LED arrays, whereas the second driver is inactivated" (claim 1)
- "and to operate thereof" (claim 9)
- "normal" (claim 12)
- "without flickering" (claim 15)

- "no electric shock hazard possibly occurred" (claim 20)

**3. U.S. Patent 10,645,782**

- "full power" (claim 1)
- "meet LED luminaire efficacy requirements" (claim 1)
- "when the line voltage from the AC mains is unavailable" (claims 1, 21)
- "when the line voltage from the AC mains is available" (claims 1, 21)
- "partially coupled" (claims 1, 21)
- "detect whether the second DC voltage exists and to bias and turn on the first electronic switch based on a result of the detection" (claims 4, 24)

**4. U.S. Patent 11,172,551**

- "to sustain a dimming function" (claims 1, 13)
- "electric current bypass circuit" (claims 1, 13)
- "the primary winding is further configured to be charged over the on-time and discharged over the off-time" (claim 17)

**5. U.S. Patent 11,846,396**

- "controllable increments" (claim 1)
- "at a full power" (claim 1)

**C. Written Description Contentions**

The Asserted Claims are invalid because the Asserted Patents do not include sufficient written description of the purported inventions claimed therein, and of the manner and process of making and using said inventions, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which the inventions pertain, or which they are most nearly connected, to make and use any of the claimed inventions. 35 U.S.C. § 112, ¶1.

Below is a list of terms or phrases in the Asserted Claims that lack written description support in the specification of the corresponding Asserted Patent, at least as apparently construed by Plaintiff in its Infringement Contentions, rendering the Asserted Claims invalid pursuant to § 112, ¶1. Specifically, the specifications of the Asserted Patents do not provide sufficient written description or enablement of the aspects of the alleged invention corresponding to the following claim limitations, rendering the Asserted Claims in which they appear (and any claims depending therefrom) invalid:

**1. U.S. Patent 10,295,905**

| Claim Term | Claims |
|---|---|
| "when a rechargeable battery test is performed, both the first full-wave rectifier and the second full-wave rectifier are inactivated to disable both the charging circuit and the second driver" | Claim 1 |
| "when only one…is energized…the other one of the two sets of electrical conductors do not conduct electric current" | Claim 18 |

**2. U.S. Patent 10,237,946**

| Claim Term | Claims |
|---|---|
| "when a rechargeable battery test is performed, the first driver is enabled to operate the one or more LED arrays, whereas the second driver is inactivated" | Claim 1 |
| "no electric shock hazard possibly occurred" | Claim 20 |

**3. U.S. Patent 10,645,782**

| Claim Term | Claims |
|---|---|
| "partially coupled" | Claims 1, 21 |

**4. U.S. Patent 11,172,551**

| Claim Term | Claims |
|---|---|
| "to sustain a dimming function" | 1, 13 |
| "the primary winding is further configured to be charged over the on-time and discharged over the off-time" | 17 |

**5. U.S. Patent 11,846,396**

| Claim Term | Claims |
|---|---|
| "regulated output voltage" | Claim 1 |
| "voltage regulator configured to automatically receive the forward electric current and the reverse electric current to and from the rechargeable battery, respectively" | Claim 19 |

These are merely examples and are not intended to be limiting. RAB reserves all rights to amend its Invalidity Contentions under § 112, ¶1, including after an Asserted Claim is ultimately construed by the Court, in response to any interpretation of an Asserted Claim embodied in Plaintiff's infringement positions, and/or to account for any changes in the law concerning written description. RAB additionally reserves the right to provide additional explanation and/or argument for its Invalidity Contentions under § 112, ¶1, including, for example, based on expert testimony. Plaintiff has not yet revealed its proposed constructions for the terms in the Asserted Patents. Once Plaintiff has identified its proposed constructions, Plaintiff's constructions may render certain terms unsupported by adequate written description. RAB further expressly reserves the right to raise and address, once the parties have exchanged claim terms and constructions, any written description issues arising out of those exchanges.

### D. Enablement Contentions

The specifications of the Asserted Patents do not provide sufficient enablement of the aspects of the alleged invention corresponding to the following claim limitations, rendering the Asserted Claims in which they appear (and any claims depending therefrom) invalid:

#### 1. U.S. Patent 10,295,905

| Claim Term | Claims |
|---|---|
| "when only one…is energized…the other one of the two sets of electrical conductors do not conduct electric current" | Claim 18 |

#### 2. U.S. Patent 10,237,946

| Claim Term | Claims |
|---|---|
| "no electric shock hazard possibly occurred" | Claim 20 |

#### 3. U.S. Patent 10,645,782

| Claim Term | Claims |
|---|---|
| "partially coupled" | Claims 1, 21 |

#### 4. U.S. Patent 11,172,551

| Claim Term | Claims |
|---|---|
| "to sustain a dimming function" | 1, 13 |
| "the primary winding is further configured to be charged over the on-time and discharged over the off-time" | 17 |

#### 5. U.S. Patent 11,846,396

| Claim Term | Claims |
|---|---|
| "regulated output voltage" | Claim 1 |
| "voltage regulator configured to automatically receive the forward electric current and the reverse electric current to and from the rechargeable battery, respectively" | Claim 19 |

These are merely examples and are not intended to be limiting. RAB reserves all rights to amend its Invalidity Contentions under § 112, ¶1, including after an Asserted Claim is ultimately construed by the Court, in response to any interpretation of an Asserted Claim embodied in Plaintiff's infringement positions, and/or to account for any changes in the law concerning enablement. RAB additionally reserves the right to provide additional explanation and/or argument for its Invalidity Contentions under § 112, ¶1, including, for example, based on expert testimony. Plaintiff has not yet revealed its proposed constructions for the terms in the Asserted Patents. Once Plaintiff has identified its proposed constructions, Plaintiff's constructions may render certain terms unsupported by adequate written description. RAB further expressly reserves the right to raise and address, once the parties have exchanged claim terms and constructions, any written description issues arising out of those exchanges.

## VIII. DOCUMENT PRODUCTION

Pursuant to Paragraph 3-4(a) of Miscellaneous Order No. 62, RAB has produced representative technical documentation within its possession, custody, and control that shows the operation of aspects or elements of the Accused Instrumentalities identified by Plaintiff in its Infringement Contentions. *See*, *e.g.*, RAB's Fourth Supplemental Responses to Aleddra's First Set of Interrogatories (Nos. 1-2) and any further supplementation thereto. RAB reserves the right to supplement these disclosures with additional documentation.

Pursuant to Paragraph 3-4(b) of Miscellaneous Order No. 62, RAB has produced a set of prior-art references identified in these Invalidity Contentions for prior art related to the Asserted Patents. Such references can be found at the following Bates range: RAB-002082-RAB-004508. RAB's search for prior art references, additional documentation, and/or corroborating evidence concerning prior art systems and methods is ongoing. Accordingly, RAB reserves the right to supplement its production, as provided by the local rules, as additional prior-art references are identified during the course of discovery. Such additional evidence may include physical equipment specimens obtained through further investigation and discovery.

Date: September 18, 2026

*<u>/s/ Nathan R. Speed</u>*
William E. Davis, III
Texas State Bar No. 24047416
Thomas J. Fisher
VA Bar No 44062; DC Bar No 1643972
Ty Wilson
Texas State Bar No. 24106583
DAVIS FIRM PC
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
T: (903) 230-9090 / F: (903) 230-9661
bdavis@davisfirm.com
twilson@davisfirm.com
tfisher@davisfirm.com

Michael N. Rader (*pro hac vice*)
Tonia A. Sayour (*pro hac vice*)
WOLF, GREENFIELD & SACKS, P.C.
605 Third Avenue, 25th Floor
New York, NY 10158
mrader@wolfgreenfield.com
tsayour@wolfgreenfield.com
617.646.8000 Phone
617.646.8646 Fax

Scott A. McKeown (*pro hac vice*)
WOLF, GREENFIELD & SACKS, P.C
601 Massachusetts Avenue NW
Washington, DC 20001
smckeown@wolfgreenfield.com

617.646.8000 Phone

Nathan R. Speed (*pro hac vice)*
John W. Custer (*pro hac vice*)
WOLF, GREENFIELD & SACKS, P.C
600 Atlantic Avenue
Boston, MA 02210
nspeed@wolfgreenfield.com
jcuster@wolfgreenfield.com
617.646.8000 Phone

*Counsel for Defendant RAB Lighting, Inc.*