IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| ALEDDRA INC.,<br><br>Plaintiff,<br><br>v.<br><br>RAB LIGHTING INC.,<br><br>Defendant. | Civil Action No. 7:26-cv-00065-O<br><br>**REDACTED VERSION** |

**RAB LIGHTING INC.'S RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND ITS INFRINGEMENT CONTENTIONS**

Use of Generative Artificial Intelligence

Pursuant to Local Civil Rule 7.2(f), the undersigned counsel hereby certifies that the generative artificial intelligence (AI) program Claude was utilized to assist in the preparation of this brief.

The undersigned, personally or with the assistance of an associate at the undersigned's firm, has verified every legal citation, record reference, and factual assertion in the brief. The undersigned further exercised independent judgment as to the brief's contents and takes full responsibility for the brief.

# TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. BACKGROUND .......... 3

A. Aleddra's August 10 Contentions .......... 3

B. RAB's Production and Non-Infringement Contentions .......... 3

C. The October 27 Amendments .......... 4

D. The Schedule .......... 5

III. LEGAL STANDARD .......... 5

IV. ARGUMENT .......... 6

A. RAB does not oppose the amendments that carry forward Aleddra's existing theories .......... 6

B. Aleddra has not shown good cause for the Contested Amendments. .......... 7

C. The importance factor does not change the result. .......... 12

D. Aleddra does not explain the time it took after RAB's production. .......... 13

V. CONCLUSION .......... 14

# TABLE OF AUTHORITIES

**Cases**

*Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*,
616 F.3d 1249 (Fed. Cir. 2010)........8

*H-W Tech., L.C. v. Apple, Inc.*,
No. 3:11-cv-651-G, 2012 WL 3650597 (N.D. Tex. Aug. 2, 2012)........5

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
467 F.3d 1355 (Fed. Cir. 2006)........5

*Realtime Data, LLC v. Actian Corp.*
No. 6:15-CV-463-RWS-JDL, 2016 WL 9340797 (E.D. Tex. Aug. 11, 2016)........8

*Summit 6 LLC v. HTC Corp.*,
No. 7:14-cv-00014-O, 2014 WL 11514929 (N.D. Tex. Nov. 16, 2014)........5, 12, 13

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
520 U.S. 17 (1997)........9

# I. INTRODUCTION

Aleddra describes its proposed October 27 amendments as "minor modifications" that "in no way change Aleddra's basic theory of infringement." Dkt. 78 ("Mot.") at 1, 5. For some of its amendments, that description is fair, and RAB does not oppose those amendments. Section IV.A identifies those modest amendments to which RAB has no objection.

A handful of Aleddra's proposed amendments, however, are significantly different. These amendments fall into four categories, and each changes ***what*** Aleddra accuses or ***how*** it alleges RAB's products infringe. Each amendment concerns RAB products and schematics that Aleddra had when it served its original infringement contentions on August 10, 2026, and several rest on datasheets Aleddra already had at that time too.

1. **'551 patent, limitation [1e] (the "Bypass Equivalents Theory").** Aleddra adds a new doctrine of equivalents theory for this limitation. [redacted] Appx622-624[1], Appx643-645, Appx667-669.

2. **'946 patent, limitation [1f] (the "Output-Resistor Remaps").** In all three charts for this limitation Aleddra moves the "*output resistor*" to different structures. In its August 10 contentions, it mapped the limitation to discrete current-sensing resistors [redacted] The amended charts now point to [redacted] or to a different pair of resistors (T10EM-17). Appx291-301, Appx347-356, Appx409-418.

3. **'946 patent, claim 16 (the "Sense-Resistor Remaps").** For the T10EM-17 and the T10EM-24, the accused current-sensing resistors move from discrete resistors on the board to a current-sensing element inside the driver IC. Appx382-390, Appx438-444.

**4. '946 patent, claim 11 (T10EM-17) (the "Claim 11 Remap").** [redacted] Appx376-380.

These four changes (collectively, "the Contested Amendments") are changes in infringement positions, not minor modifications to existing positions. Aleddra says it seeks leave for its alleged "refinements" only out of caution (Mot. at 5, 8), and Aleddra told RAB that it reserves the right to proceed with them in its expert reports "even if no agreement or ruling is reached." Appx804. But Miscellaneous Order No. 62 deems preliminary contentions final and allows amendment otherwise only by order on a showing of good cause. Misc. Order No. 62 ¶¶ 3-6, 3-7(b). Aleddra offers a single diligence narrative—RAB's September document production—for the amendments it made to fifteen of seventeen charts. But it does not tie the Contested Amendments to any specific document RAB produced after the original contentions were served. Nor could it, because none of those documents supports the new theories. For these reasons, the Court should deny the motion as to the Contested Amendments.

---

[1] All "Appx" and Exhibit citations are to the appendix that Aleddra filed in support of its motion. *See* Dkt. Nos. 79 (public), 81 (sealed).

[2] The disputes over the Sense-Resistor Remaps and the Claim 11 Remap concern dependent claims, and they may not survive a reasonable narrowing of the case. Even after opening expert reports, [redacted]. Under the Court's model order, Aleddra would have made its final election of no more than five claims per patent and sixteen claims total 28 days before opening expert reports. Misc. Order No. 62, App. C. In the parties' joint status report, RAB proposed adopting that order, and Aleddra responded that narrowing would be more efficient after preliminary contentions were served. Dkt. 18, item 23. Those contentions were served in August and September. On November 20, 2026, RAB proposed that Aleddra elect no more than five claims per patent and sixteen total by December 4. Aleddra declined. Should Aleddra be required to narrow its claims as the model order contemplates, the Court may not need to resolve these latter two amendments at all.

## II. BACKGROUND

### A. Aleddra's August 10 Contentions

Aleddra served its Preliminary Infringement Contentions along with seventeen claim charts on August 10, 2026. These charts were built on teardowns of RAB products Aleddra bought from third parties. Mot. at 2; Appx01-07. The charts identified the boards, the principal integrated circuits, and the claimed structures in each accused product. *See, e.g.*, Appx023-028.

For the '551 patent, the charts for the T8 products and the T10EM-24 [redacted] Appx624-625, Appx639-642, Appx663-666, Appx670. For limitation [1e], [redacted] Appx621, Appx642, Appx666. The same charts pleaded infringement under the doctrine of equivalents for limitation [1g]. Appx625-626, Appx646-647, Appx671-672. They pleaded no equivalents theory for [1e]. Appx621-624, Appx642-645, Appx666-669.

For the '946 patent, the charts mapped the "*output resistor*" of limitation [1f] to the current-sensing resistors in each product. Appx291-292, Appx347-348, Appx409-410. [redacted] Appx297-301, Appx355-356, Appx416-418. They mapped the claim 16 current-sensing resistors to the same discrete resistors, [redacted] Appx382-390, Appx438-444. For claim 11 on the T10EM-17, [redacted] Appx376-377, Appx379.

### B. RAB's Production and Non-Infringement Contentions

RAB produced technical documents on August 28 and continued to do so through September 28. Appx061-065. Aleddra agreed on September 8 to buy samples of RAB's accused

products for its expert, and they shipped in two batches by September 16. Appx798-799 (Exhibit 21). RAB served its non-infringement contentions on September 8. Appx105-113. RAB's September 25 and September 29 supplemental interrogatory responses identified certain bills of materials and datasheets by Bates number. Appx076-77, Appx080-84.

RAB's September 8 non-infringement contentions do not address the limitations discussed in the Contested Amendments. [redacted] Appx107-109. [redacted] Appx111-113. [redacted]

### C. The October 27 Amendments

Aleddra served amended charts for fifteen exhibits on October 27, 2026, twenty-two days before its opening expert reports were due. Mot. at 2-3. Its cover email listed the "redline edits" by chart and limitation and did not describe any of them as a new equivalents theory. Appx805. The email also stated that Aleddra does not agree that "most, if any" of its changes require amendment and that it reserves the right to proceed with them in its expert reports even if no ruling issues. Appx804. RAB asked for a list of the figure changes, and Aleddra supplied one on October 28. Appx800-804. RAB declined to consent on October 29, identified the new '551 equivalents theory and the remapped '946 limitations, and explained that the amended contentions present new theories about the same products. Appx800-801. Aleddra then moved to amend on November 5.

### D. The Schedule

The joint claim construction statement was due November 10, 2026; opening expert reports were exchanged November 18;[3] discovery closes January 8, 2027; and trial is set for June 7, 2027. Mot. at 1-2; Dkt. 19; Dkt. 77.

## III. LEGAL STANDARD

Preliminary infringement contentions are deemed final unless amended under ¶ 3-6 or by order of the presiding judge "upon a showing of good cause." Misc. Order No. 62 ¶¶ 3-6, 3-7(b). Good cause may include newly discovered accused instrumentalities or bases for claiming infringement. *Id.* ¶ 3-7(b). The movant must include a statement that the newly discovered items "were not known to that party prior to the motion despite diligence in seeking out same." *Id.*

Courts in this District weigh four factors to assess good cause: the reason for the delay and whether the party was diligent, the importance of what the Court would exclude, the danger of unfair prejudice, and the availability of a continuance. *Summit 6 LLC v. HTC Corp.*, No. 7:14-cv-00014-O, 2014 WL 11514929, at *2 (N.D. Tex. Nov. 16, 2014); *H-W Tech., L.C. v. Apple, Inc.*, No. 3:11-cv-651-G, 2012 WL 3650597, at *6 (N.D. Tex. Aug. 2, 2012). Good cause requires diligence. A party who learns of new information must move promptly, and the movant bears the burden. *Summit 6*, 2014 WL 11514929, at *2, *5 (quoting *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1363, 1366 (Fed. Cir. 2006)).

---

[3] [redacted] If Aleddra is denied leave to include those theories in its amended contentions, then RAB will seek to strike those theories from Aleddra's expert report if Aleddra does not voluntarily withdraw them.

## IV. ARGUMENT

### A. RAB does not oppose the amendments that carry forward Aleddra's existing theories.

RAB does not contest an amendment that merely swaps a part number or a datasheet citation, that adds detail about how an already-accused component works, that corrects a label, or that narrows the case. In a nutshell, those changes are: the corrected identifications of the integrated circuits with their datasheet citations (*see, e.g.*, Appx136, Appx244, Appx346); the added explanation concerning how the SBR10's driver IC operates (Appx150, Appx304); conforming figures that do not add or re-identify a claimed structure (*see, e.g.*, Appx802); the added accused products with the same circuit boards as previously accused products (Appx612, Appx635); the withdrawal of '946 claims 12 and 13 (Appx381, Appx805); and typographical conforming edits. Where RAB's document production told Aleddra what a black-box component was, RAB agrees that Aleddra may update its contentions to identify the component more precisely. RAB's position is not an agreement that any chart is correct, and RAB reserves its objections to the sufficiency and merits of every chart.

The problem with Aleddra's motion is that it does not separate these minor changes from the other more significant changes. It sorts all the amendments into four categories. Mot. at 4-6. For the second, the "[u]pdated circuit schematics," it states that none of the amendments "change which component is accused of meeting a particular claim element." Mot. at 4-5, n.4. But the exhibits Aleddra lists for that category include the '946 charts, Mot. at 5, where it moves the accused "*output resistor*" to different structures. *See* Section IV.B.3.

### B. Aleddra has not shown good cause for the Contested Amendments.

#### 1. The motion offers one diligence narrative for all of the amendments, but ties no recently produced document to any proposed amendment.

Aleddra's statement under ¶ 3-7(b) says that the amendments were not known "prior to the service of its Preliminary Infringement Contentions because the discovery now relied upon had not yet been produced." Mot. at 7. But Aleddra's motion does not say which newly produced RAB document supports which of the Contested Amendments. None does.

The proposed charts cite no new documents for the new Bypass Equivalents Theory. For the T10EM-17 Sense-Resistor Remap, Aleddra cites only its own datasheet, which it already cited in August. Appx382, Appx384. [redacted] Appx292, Appx348; Appx028. [redacted] They do not identify the new "*output resistor*" that Aleddra now points to. The Claim 11 Remap and the T10EM-24 Output-Resistor and Sense-Resistor Remaps do cite RAB datasheets for chips Aleddra had not identified by part number. Appx377, Appx410, Appx438. But those datasheets correct part numbers, which RAB does not oppose. They did not change the location or identity of any component on the boards Aleddra had in August.

Aleddra also states that some of its amendments "respond to positions taken by RAB in its non-infringement contentions." Mot. at 5. For the changes at issue, they do not. [redacted] Appx107-109, Appx111-113. RAB's non-infringement contentions therefore could not have prompted Aleddra's proposed

amendments. *Realtime Data, LLC v. Actian Corp.* No. 6:15-CV-463-RWS-JDL, 2016 WL 9340797, at *3 (E.D. Tex. Aug. 11, 2016), which Aleddra cites for the proposition that a patentee may add equivalents in response to non-infringement contentions, does not apply where the contentions say nothing on the point. Mot. at 10.

**2. The Bypass Equivalents Theory ('551 limitation [1e]) is a new equivalents theory for products Aleddra had in hand.**

Aleddra examined the accused '551 products before August 10. Its charts identified the relevant controllers, cited its own datasheets for them (ALEDDRA_RAB-00000651 and ALEDDRA_RAB-00000646), and [redacted] Appx624-625, Appx641-642, Appx666, Appx670. Aleddra then elected to assert only literal infringement for [1e], despite knowing how to plead equivalents. For example, it pled equivalents for limitation [1g] in the same charts. Appx625-626, Appx646-647, Appx671-672. Nothing RAB produced after August 10 changed the circuit Aleddra had charted, and the amended text cites no RAB document for the new theory. Appx622-624, Appx643-645, Appx667-669.

Aleddra says its amendments "expand upon and elucidate the existing infringement theories." Mot. at 12. The new text for the Bypass Equivalents Theory does something different. [redacted] Appx621-622, Appx642-643, Appx666-667. [redacted] Appx622-624, Appx643-645, Appx667-669. Claim 1 recites the LED driving circuit in limitation [1d] and the bypass circuit in limitation [1e] as separate elements. '551 patent, claim 1. Separately listed elements are presumed to be distinct components, *Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616

F.3d 1249, 1254 (Fed. Cir. 2010), and equivalence is assessed element by element rather than for the invention as a whole. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997).

RAB does not ask the Court to decide the merits of the new theory on this motion. The point is narrower. The new theory is a different infringement position about the same product. [redacted], and [redacted] Appx112. The equivalents theory gives Aleddra a second bite at the apple with respect to limitation [1e] if the resistor and capacitor pair it identified does not meet the limitation literally. Aleddra grounds its motion on newly produced discovery, but this new theory does not come from that discovery. It rests on the same products and the same datasheets Aleddra cited in its August 10 contentions.

**3. The Output-Resistor Remaps ('946 limitation [1f]) moved the accused structure in all three charts.**

The August infringement charts mapped the "*output resistor*" to current-sensing resistors [redacted] Appx291-301, Appx347-356, Appx409-418. The amended charts change that mapping. [redacted] Appx291-292, Appx409-410. For the T10EM-17, it is a different pair of resistors on the board, [redacted] Appx347-348, Appx355-356.

The motion does not show that these mappings depend on RAB's production. [redacted] and on Aleddra's own datasheet for the driver IC (ALEDDRA_RAB-00000597), which its August charts already cited. Appx291-301; *see also* Appx28 (citing datasheet). [redacted]

[redacted], Appx296-297. [redacted] Appx292.

[redacted] Appx410. To the extent the measurements came from the samples Aleddra bought from RAB, those samples shipped by September 16. Appx798-799 (Exhibit 21). Either way, the measured values do not come from any RAB document. Nor did Aleddra need RAB's samples to take them. Its August charts were built on teardowns of RAB products it bought from third parties. Mot. at 2.

The two newly identified T10EM-17 resistors are on the board Aleddra examined and appear in its own schematic. [redacted] and [redacted] a datasheet Aleddra had already cited in its August contentions. Appx348. Aleddra could have identified the resistors as the output resistor in August.

None of the three Output-Resistor Remaps depends on a document RAB produced in September. Each new identification rests on the board Aleddra examined before August 10, Aleddra's own measurements, or a datasheet Aleddra already had. The RAB documents the amended charts cite supply part numbers, component values, and pin functions. They do not supply the new identification of the output resistor. RAB does not oppose substituting the correct part numbers and datasheets, because its production supplied that information. But Aleddra could have charted [redacted], or the two T10EM-17 resistors as the output resistor in August, and the motion does not explain why it did not.

**4. The Sense-Resistor Remaps ('946 claim 16) move the accused current-sensing resistor into the driver IC.**

Claim 16 requires "*one or more current sensing resistors coupled in series with the switch*." In August, Aleddra charted discrete resistors on the board [redacted] Appx382, Appx388-390, Appx438, Appx443-444. [redacted] and now point to a sensing element inside each driver IC. *Id.*

For the T10EM-17, the new mapping cites only Aleddra's own datasheet for the driver IC, which it cited in August. Appx382, Appx384. [redacted] Appx388-389. The August equivalents theory is deleted. Appx389-390. The new equivalents theory is a different one, and the amended text cites no RAB document for it. Because the new mapping and the new equivalents theory rest only on a datasheet Aleddra cited in August, RAB's September production cannot be the reason for either change in Aleddra's theories.

For the T10EM-24, the amended chart cites a datasheet RAB produced. Appx438, Appx443. RAB does not dispute that its bill of materials identified that part. But Aleddra already knew what kind of chip it was. The August chart identified the driver IC from its marking [redacted] Appx409-410. [redacted] Appx438, Appx443-444. The amendment moves the accused sense resistor to a resistor inside the driver IC [redacted] Aleddra did not need RAB's datasheet to make that change. If Aleddra believed the claimed current-sensing resistor was inside the driver IC, it could have charted that in August. What RAB's datasheet changed was the part number, not what the part is or what it contains.

**5. The Claim 11 Remap ('946 claim 11) accuses new structures and adds an equivalents theory.**

Claim 11 requires a precision voltage regulator and a series of voltage dividers coupled to it. [redacted] Appx376-377. [redacted] Appx376-380. RAB acknowledges that its bill of materials and the chip's datasheet identified the charger IC by part number. That identification supports correcting the part number, which RAB does not oppose.

The identification, however, does not explain the rest of the amendment. [redacted] and nothing RAB produced changed them. They are still on the board. [redacted] It charted the chip under a different marking. Appx377, Appx802. RAB's datasheet supplied the correct part number, but not the idea of looking inside the chip. Moving the claimed regulator and dividers from board-level parts to the charger IC's internals is a new infringement position about the same product. [redacted]

**C. The importance factor does not change the result.**

Denying leave for the Contested Amendments would not end Aleddra's case. Aleddra keeps every theory in its August contentions, each of which it chose after examining the products, and it keeps every amendment RAB does not oppose. *See Summit 6*, 2014 WL 11514929, at *7 (importance weighed only slightly in favor of the plaintiff where exclusion would not end the case,

and not enough to overcome the lack of diligence). Aleddra argues that the amendments incorporate discovery from RAB, that the equivalents theory gives it an alternate means to prove infringement, and that excluding the amendments would discourage the exchange of information. Mot. at 10-11. The first is true of the amendments RAB does not oppose. It is not true of the Contested Amendments, which rest on the boards Aleddra examined before August 10, its own measurements, and datasheets it already had. The other two arguments apply to any amendment a patentee might seek and do not justify these changes.

### D. Aleddra does not explain the time it took after RAB's production.

This factor matters little for the Contested Amendments because, as shown above, they do not depend on RAB's September production. But even if they did, Aleddra has not explained the delay. Aleddra says it worked with its expert and served the amendments about a month after RAB's last supplemental discovery responses. Mot. at 3, 9. That does not explain the interval. RAB served its non-infringement contentions on September 8, produced the datasheets for the chips at issue on September 16, and produced the bills of materials on September 23 and 24. Appx062-64, Appx105-113. Aleddra served the amendments on October 27, six weeks after the datasheets. Aleddra bears the burden of showing diligence, and the motion does not say what that work was or why it took until October 27. *Summit 6*, 2014 WL 11514929, at *5.

RAB does not contend that the stage of the case bars amendment. RAB's concern is that its invalidity analysis uses Aleddra's infringement mappings to read the prior art, and an equivalents position that treats different structures as interchangeable also bears on obviousness. Changing those mappings changes that analysis.

## V. CONCLUSION

RAB requests that the Court deny Aleddra's motion as to the Contested Amendments and require that Aleddra's infringement expert disclosures be limited to the theories in its operative contentions.

Date: November 25, 2026

*/s/ Nathan R. Speed w/permission*
*William E. Davis, III*
William E. Davis, III
Texas State Bar No. 24047416
Thomas J. Fisher
VA Bar No 44062; DC Bar No 1643972
Ty Wilson
Texas State Bar No. 24106583
DAVIS FIRM PC
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
T: (903) 230-9090 / F: (903) 230-9661
bdavis@davisfirm.com
twilson@davisfirm.com
tfisher@davisfirm.com

Michael N. Rader (*pro hac vice*)
WOLF, GREENFIELD & SACKS, P.C.
605 Third Avenue, 25th Floor
New York, NY 10158
mrader@wolfgreenfield.com
617.646.8000 Phone
617.646.8646 Fax

Scott A. McKeown (*pro hac vice*)
WOLF, GREENFIELD & SACKS, P.C
901 New York Avenue, NW, Suite 500 East
Washington, DC 20001
smckeown@wolfgreenfield.com
202.571.5001 Phone
617.646.8646 Fax

Nathan R. Speed (*pro hac vice*)
Jason W. Balich (*pro hac vice*)
John W. Custer (*pro hac vice*)

WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210
nspeed@wolfgreenfield.com
jbalich@wolfgreenfield.com
jcuster@wolfgreenfield.com
617.646.8000 Phone
617.646.8646 Fax

***Counsel for Defendant RAB Lighting, Inc.***

**CERTIFICATE OF SERVICE**

I certify that this document is being filed through the Court's electronic filing system, which serves counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF). Any counsel for other parties who are not registered participants are being served by first class mail on the date of electronic filing.

*/s/William E. Davis, III*
William E. Davis, III